Affirmed and Memorandum Opinion filed August 3, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00634-CV

___________________

 

The City of Missouri City, Texas,
Appellant

 

V.

 

Brenda Passante, Gloria Robinson, Norma Young,
and Sandra Henry, Appellees



 



 

On
Appeal from the 268th District Court

Fort Bend County,
Texas



Trial Court Cause No. 06-DCV-147263

 



 

 

MEMORANDUM OPINION

            Appellant, The City of Missouri City, Texas (“Missouri
City”), filed this interlocutory appeal from the trial court’s denial of its
Plea to the Jurisdiction and Motion for Summary Judgment.  Finding no error, we
affirm.

Factual and Procedural Background

I.         The Wreck and Subsequent Investigation

On the afternoon of Sunday, December 12, 2004,
Missouri City police officer Nicolas Krupa was on patrol in a marked Missouri
City Police Department patrol car.  Officer Krupa was driving east on
Cartwright Road when he heard Missouri City police officer Russell Terry’s call
that he needed assistance in dealing with the arrest of car theft suspects.[1]  According to Officer
Krupa, upon receipt of a call for assistance from another police officer, all
available police units “are directed to immediately proceed to assist the
officer in danger.”[2] 
In addition, responding officers are directed to continue responding “until
notified that the situation is rendered safe.”  Also, responding to an “officer
assist” call constitutes a “Priority One Response” under Missouri City Police
Department policies.  Officer Krupa also testified a responding officer is
required to maintain radio silence to keep the radio free for the officer in
need of assistance to communicate with dispatch and responding officers regarding
the status of the situation.  As a result, Officer Krupa did not contact the
Missouri City Police Department dispatcher prior to the crash at issue in this
appeal.  In addition, Officer Krupa testified he never received an order from
the dispatcher to go to Detective Terry’s assistance and it was unlikely the
dispatcher knew his location or even that he was responding to Detective Terry’s
call for assistance.

At the time Officer Krupa heard Detective Terry’s
call for assistance, he estimated he was four to five miles from Detective Terry’s
location.  While Officer Krupa testified he believed he might be the closest
officer to Detective Terry, he also testified that he had no knowledge as to the
location of the other on-duty Missouri City police officers.  According to Officer
Krupa, within ten seconds of receiving Detective Terry’s call for assistance,
he decided to initiate a Priority 1 response, turned on his emergency lights
and siren, and increased his speed to five to ten miles per hour over the forty
miles per hour speed limit (i.e. to forty-five to fifty miles per hour) on
Cartwright Road.  Officer Krupa testified he wanted to drive faster but that
traffic conditions on Cartwright Road prevented him from doing so.  Officer Krupa
also testified that once he had turned on his emergency lights and siren, they
remained on up to the collision at issue in this litigation.

Officer Krupa testified traffic was moderate to light
on Cartwright Road[3]
as he proceeded east.  Officer Krupa passed through several intersections on
Cartwright, two of which had stoplights, without incident.  Officer Krupa
testified he approached the intersection with Meadow Creek travelling in the
inside or left lane of eastbound Cartwright.  As Officer Krupa approached the
intersection, cars on both the eastbound and westbound sides were stopped at
the intersection.  According to Officer Krupa, there were about five cars
stopped in the outside or right lane of eastbound Cartwright ahead of him.  Officer
Krupa testified he could not be certain that these vehicles were not blocking
his line of sight to any traffic that might have been on northbound Meadow
Creek as he approached the intersection.  Officer Krupa testified he did not
see any cars moving on Meadow Creek.  As he approached the intersection, Officer
Krupa testified that he slowed the speed of his vehicle “considerably so [he]
could safely traverse the intersection.”[4] 
Officer Krupa testified that he “looked to [his] left and looked to [his] right
before entering the intersection in an effort to assure that [he] could enter
and proceed through the intersection safely as I continued to utilize my siren
and emergency lights to warn traffic of the approach of my emergency vehicle.” 
Officer Krupa testified he did not have the red light.  Finally, Officer Krupa
testified that he did not see appellee Brenda Passante’s vehicle until she
struck his police vehicle in the intersection.  As a result of the collision
with Passante’s vehicle, Officer Krupa’s police vehicle flipped three times,
crossing the median in the process, then hit the car driven by appellee Gloria Robinson,
finally coming to rest upside down on the westbound side of Cartwright Road.  All
drivers and occupants of the three vehicles were taken to various hospitals, Passante
via LifeFlight helicopter.  The extent of the injuries is not disclosed by the
record.

During her deposition, Passante testified she was
stopped at the red light at the intersection of Meadow Creek and Cartwright.  According
to Passante, the light changed to green, and at that point she proceeded into
the intersection.  According to Passante, she did not see Officer Krupa’s
patrol car, did not see flashing emergency lights or hear a siren prior to the
crash.  Finally, Passante testified that she did not remember any details of
the accident.

There were several witness statements taken as part
of either Department of Public Safety Trooper Kerry Barton’s initial
investigation of the accident or Missouri City’s investigation into the
accident that ultimately resulted in Officer Krupa being disciplined by the
Missouri City Police Department.

Catherine Claire Duyka reported she was driving
eastbound on Cartwright when she saw a marked police car go by her at a high
rate of speed.  Duyka reported she did not observe any lights nor hear any
sirens from the police car.  However, Duyka did inform the investigators that
she saw the police car’s emergency lights come on as it entered the
intersection of Cartwright and Meadow Creek.  According to Duyka, the eastbound
traffic light on Cartwright was red and she believed the vehicle driven by
Passante had the green light.

Mokhtari Robabeh saw the police car going eastbound
on Cartwright.  According to Robabeh, the police car did not appear to be speeding
because she was able to nearly catch up with the police car.  Robabeh did not
observe the police car using its flashing emergency lights and she did not hear
a siren.  Robabeh saw the police car and Passante’s vehicle collide however she
was not sure which vehicle hit the other.  She also observed the police car flip
three times and land in the westbound lanes of Cartwright.  Finally, Robabeh
reported that she did not observe the police car driving at a high rate of
speed “because I was on the telephone with my daughter and I told her I don’t
understand how the police car could have flipped over when it wasn’t going very
fast.”

Brian Michalic and Allen Lancelin were both travelling
westbound on Cartwright in separate vehicles and had stopped at the traffic light. 
Both reported the police car approached the intersection with emergency lights
and siren on.  They also informed the investigators that it was obvious to them
that the police car was not going to stop at the intersection.

Tacoma Kuyinu was behind the police car as it entered
the intersection.  According Kuyinu, the traffic light was red for the police officer
when he entered the intersection.  Kuyinu also reported that the police officer
had his emergency lights on and was intermittently using his air horn when he
entered the intersection.

Officer Krupa’s patrol car was equipped with a video
recording device that begins recording when the emergency lights are
activated.  Officer Krupa testified that the video machine was operating at the
time he entered the intersection.  Two Missouri City police officers, Larry
Brown and Stephen Cook, were assigned to remove the videotape from the machine
in Officer Krupa’s damaged patrol car.   When Officers Brown and Cook could not
get the machine to power up following the crash, they removed the videotape by
disassembling the machine.[5] 
The videotape was eventually removed and a copy was entered into evidence.  The
copy consists of a very brief segment showing the patrol car moving along what
would appear to be Cartwright Road and a single vehicle moving out of the police
car’s way.  The videotape does not show any of the actual crash or the moments
leading up to the crash.  The quality of the recording is poor.  Based on an
affidavit given by Officer Brown, Missouri City argues the wreck damaged the
tape and the recording of the entire episode.  Appellees contend there is no
evidence the tape was damaged and the brief recording is evidence that Officer Krupa
was only using his emergency lights and siren intermittently as he proceeded to
assist Detective Terry.

Trooper Barton investigated the accident.  Trooper
Barton concluded Officer Krupa contributed to the accident because he
disregarded a stop and go signal.  He also concluded Passante contributed to the
accident by failing to yield the right of way to an emergency vehicle.  Trooper
Barton also performed a speed calculation based on the skid marks at the scene
and concluded Officer Krupa was driving at approximately 32.5 miles per hour at
the time of the collision.  Trooper Barton testified that no citations were
issued as a result of the crash.

The Missouri City Police Department has a written
policy addressing a police officer’s response to calls for service.  The policy
begins:

All police personnel operating city-owned police department
vehicles shall exercise due regard for the safety of all persons.  No task,
call, or incident justifies disregard for public safety.  Further, the public
expects its officers to demonstrate exemplary driving behavior.  All police
department personnel who operate police vehicles shall respond to calls for
service within the priority call response procedures as set forth in this
policy.

The policy then established
different levels of response only one of which is relevant to this appeal:

1.         Priority 1 – This is an emergency response and
requires the use of emergency lights, siren, headlights, and other available
equipment as appropriate (e.g. spot light, public address system).

The response policy also
established that

[w]hen responding Priority 1 or Priority 2, the officer is
allowed to exceed the posted speed limit as long as the officer does not create
an unreasonable risk to life or property.  The officer is also allowed to
proceed past a red or stop signal after slowing as necessary for safe operation
(TRC 546.001).  All officers must remember that in an emergency response the
officer is not relieved from the duty to operate the vehicle with appropriate
regard for the safety of all persons or from the consequences of reckless
disregard for the safety of others (TRC 546.005).  An officer’s emergency
response should not create a substantial risk for the public at large…

The Missouri City Police Department conducted an
investigation of the collision and concluded Officer Krupa’s “speed at the time
of the accident did not allow [him] to properly clear the intersection.”  The
accident review board further concluded Officer Krupa was negligent and
contributed to the accident.  The reviewing lieutenant accepted the findings
and added that while Officer Krupa was authorized to travel priority one and
disregard the stop and go signal, he was still not relieved from the duty to
operate the vehicle with the appropriate regard for the safety of all persons. 
The Missouri City chief of police accepted the findings and disciplined Officer
Krupa with three points[6]
and a written reprimand.

In addition to Officer Krupa’s affidavits, Missouri
City also submitted the affidavits of two other Missouri City police officers
in support of its contention it was entitled to governmental immunity: Captain
Larry Capps and Detective Terry.  Both Captain Capps and Detective Terry accepted
without question Officer Krupa’s testimony (1) that he had turned on his
emergency lights and siren at the beginning of his response and kept them on until
the collision; and (2) that he had the green light as he entered the
intersection of Cartwright and Meadow Creek.  Based on that testimony, both Captain
Capps and Detective Terry opined that a reasonably prudent officer might have
believed his actions were justified under the same or similar circumstances as
those faced by Officer Krupa.

Alfred E. Moore, a retired police officer and chief
of police, prepared a lengthy affidavit and also gave a deposition as
Passante’s expert.  Chief Moore opined that no reasonably prudent police
officer, when faced with the same or similar circumstances as Officer Krupa,
would have decided to pass through a red light without stopping; nor would they
run a priority one police response using emergency equipment on an intermittent
basis. 

II.        Notice of Claims
and Procedural History

Missouri City’s charter, section 2.06, has a notice
provision that requires notice via affidavit of a claim within thirty days of
the date of the event.  According to the Missouri City charter, the notice must
contain the details of the accident, the amount of damages, the residence of
the claimant on the date of the claim and for six months prior, as well as the
names and addresses of all witnesses.

Passante served a written notice of claim letter on
Missouri City on December 23, 2004, well within the thirty day Missouri City
requirement.  However, Passante’s letter was not in affidavit form and did not meet
all of the content requirements listed above.  It is undisputed that the
Robinson appellees did not serve a written notice on Missouri City within the thirty
days.

Despite the lack of affidavit notices to Missouri
City, the appellate record contains a January 4, 2005 letter to Passante’s
attorney from Fleetwood Claim Services, Inc.  Passante attached this letter to
her response to Missouri City’s Plea to the Jurisdiction and Motion for Summary
Judgment.  The letter provides, in part, “[w]e are the claims representatives
that have been assigned by the Texas Municipal League-Intergovernmental Risk
Pool to assist with the liability investigation and handling of this claim on
behalf of their Fund Member, the City of Missouri City.”

Passante and the Robinson appellees filed separate
suits against Missouri City.[7] 
These separate suits were consolidated and Missouri City eventually filed its Plea
to the Jurisdiction and Motion for Summary Judgment, which the trial court
denied.  This interlocutory appeal followed.

 

Discussion

            In this
interlocutory appeal, Missouri City contends the trial court erred when it
denied Missouri City’s Plea to the Jurisdiction and Motion for Summary Judgment. 
Missouri City raises three issues in support of that contention.  First,
Missouri City argues the trial court should have dismissed appellees’ lawsuits because
it is immune from liability because Officer Krupa is entitled to official
immunity for his actions leading up to the December 12, 2004 wreck.  In its
second issue, Missouri City argues it is immune from liability because Officer
Krupa did not act with conscious indifference or reckless disregard for the
safety of others while responding to Detective Terry’s call for assistance. 
Finally, in its third issue, Missouri City asserts appellees’ lawsuits should
have been dismissed because appellees did not meet Missouri City’s notice
requirements.  We address each contention in turn. 

I.         The Standard of
Review

            We review a trial
court’s ruling on a plea to the jurisdiction de novo.  City of Pasadena v.
Belle, 297 S.W.3d 525, 528 (Tex. App.—Houston [14th Dist.] 2009, no pet.)
(citing Tex. Dept. of Parks & Wildlife v. Miranda, 133 S.W.3d 217,
228 (Tex. 2004)).  A defendant’s plea may challenge either the plaintiffs’
pleadings or the existence of jurisdictional facts.  Id.  When, as here,
the defendant challenges the existence of jurisdictional facts, we must
consider the relevant evidence submitted by the parties.  Id.  If that
evidence raises a fact issue as to jurisdiction, the defendant’s plea must be
denied because the issue must be resolved by the trier of fact.  Id. 
However, if the relevant evidence is undisputed or fails to present a
jurisdictional fact issue, the plea should be granted as a matter of law.  Id. 
In reviewing the evidence, we are required to assume the truth of all evidence
that favors the nonmovant, in this case, the plaintiffs-appellees.  Id.

II.        Official
Immunity

Missouri City, as a municipality and political
subdivision of the State, cannot be liable for an employee’s acts unless its
governmental immunity has been waived.  Id. at 529 (citing City of
Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994)).  Under the facts
of this case, the only possible waiver is found in section 101.021 of the Texas
Tort Claims Act (the “TTCA”), which provides, in relevant part:

A governmental unit in the state is liable for … property
damage, personal injury, and death proximately caused by the wrongful act or
omission or the negligence of an employee acting within his scope of employment
if:

(A)      the property damage, personal injury, or death
arises from the operation or use of a motor-driven vehicle or motor-driven
equipment; and 

(B)      the employee would be personally liable to the
claimant according to Texas law… 

Tex. Civ. Prac. & Rem.
Code Ann. § 101.021 (Vernon 2005).

The parties agree appellees’ claims arise from the
use of a motor vehicle.  They also agree Officer Krupa was acting within the
scope of his employment when he responded to Detective Terry’s call for
assistance.  The parties’ dispute is focused on whether Officer Krupa could “be
personally liable to the claimant[s] under Texas law.”  According to Missouri
City, Officer Krupa could not be personally liable under Texas law because the
evidence conclusively proved he responded to Detective Terry’s call for
assistance in good faith and therefore he retained his official immunity.  Missouri
City’s argument then continues by asserting that since Officer Krupa retained
his official immunity, he could not be personally liable to the plaintiffs
according to Texas law and as a result, Missouri City has not waived its
governmental immunity. 

Official immunity is an affirmative defense and
therefore the burden rests on the defendant, Missouri City, to establish all
elements of that defense.  Id. at 530.  Under that defense, a government
employee may be immune from a lawsuit that arises from (1) the performance of
discretionary duties (2) in good faith, (3) provided he was acting in the
course and scope of his authority.  Id.  In appellant’s first issue,
only good faith is in dispute.

In this context, “good faith” is defined as a
standard of objective legal reasonableness that disregards the police officer’s
subjective state of mind.  Id. (citing Wadewitz v. Montgomery,
951 S.W.2d 464, 466 (Tex. 1997)).  Therefore, an officer has the burden to
prove that a reasonably prudent officer might have believed his actions were
justified under the same or similar circumstances.  Id.  To rebut an
officer’s prima facie showing of good faith, a plaintiff must establish that no
reasonable person in the defendant’s position could have thought the facts were
such that they justified the defendant’s actions.  Id.

The good faith standard of reasonableness is subject
to a balancing test that weighs the need for the officer’s actions
against the risks entailed by such conduct based on the officer’s
perception of the facts at the time of the event.  Wadewitz, 951 S.W.2d
at 467.  The need aspect of the balancing test refers to the urgency of the
circumstances requiring police intervention and requires an evaluation of the
following factors: (1) the seriousness of the crime or accident the officer is
responding to, (2) whether the officer’s immediate presence is necessary to
prevent injury or loss of life or to apprehend a suspect, and (3) what
alternative courses of action, if any, are available to achieve a comparable
result.  Id.  The risk aspect refers to the countervailing public safety
concerns and requires an evaluation of the following factors: (1) the nature
and severity of the harm the officer’s actions could cause (including injuries
to bystanders as well as the possibility that the officer may not reach the
scene of the original emergency), (2) the likelihood that any harm would occur,
and (3) whether the risk of harm would be clear to a reasonably prudent
officer.  Id.  To obtain summary judgment, a police officer’s proof must
sufficiently address these need/risk factors.  Telthorster v. Tennell,
92 S.W.3d 457, 462 (Tex. 2002).  An expert giving testimony regarding good
faith must discuss what a reasonable officer could have believed based on the
officer’s perception of the facts at the time of the event, and this must be
substantiated with reference to both the “need” and “risk” balancing test.  City
of Pasadena, 297 S.W.3d at 531 (citing Wadewitz, 951 S.W.2d at
466–67).  In addition, the facts of the case may require the expert to provide
a continuing assessment of the “need” and “risk” factors because emergency
responses and police pursuits may involve rapidly changing circumstances.  Id.
(citing University of Houston v. Clark, 38 S.W.3d 578, 582–83 (Tex.
2000)).

Under this analysis, a reviewing court must first
determine whether the appellant governmental unit met its initial burden to conclusively
prove the police officer’s good faith.  Only when it has been determined that
the governmental unit met this burden, does the analysis turn to the evidence
submitted by the nonmovant to determine if there is genuine issue of material
fact on the issue of good faith.  Id.  For purposes of our resolution of
Missouri City’s first issue, we will assume without deciding that Missouri City
met its initial burden and turn to an examination of whether the evidence
submitted by the parties raises a genuine issue of material fact.  We conclude
that it does.

First, the various witness statements, Passante’s
deposition testimony, as well as the video from Officer Krupa’s police vehicle,
raise a genuine issue of material fact as to whether Officer Krupa used his
emergency lights and siren continuously or used them intermittently and turned
them on only as he entered the intersection of Cartwright and Meadow Creek.[8]  If it was the
latter, it would be too late to warn motorists on Meadow Creek, such as
Passante, of his approach and the need to yield the right of way to him.

We also conclude the various witness statements,
Passante’s deposition testimony, and the investigation of Trooper Barton, raise
a genuine issue of material fact on whether Officer Krupa had the green light
as he approached the intersection of Cartwright and Meadow Creek.

Officer Krupa testified there were several cars in
the outside lane of eastbound Cartwright that were stopped at the intersection
of Cartwright and Meadow Creek.  In addition, Officer Krupa admitted that he did
not see Passante’s vehicle prior to the crash. We conclude this evidence creates
a fact issue as to whether or not those vehicles may have blocked Officer
Krupa’s vision as he approached the intersection.        

Because there are many fact issues surrounding
Officer Krupa’s decision to respond to Detective Terry’s call for assistance in
the manner he did, we hold the trial court did not err in denying Missouri
City’s Plea to the Jurisdiction and Motion for Summary Judgment based on
official immunity.  City of Pasadena, 297 S.W.3d at 534.  We overrule
Missouri City’s first issue.[9]

III.      Emergency
Exception/Recklessness

In its second issue, Missouri City contends it
established as a matter of law that Officer Krupa did not act recklessly and
appellees’ evidence did not create a genuine issue of material fact on that
issue.  We disagree.

The TTCA waives immunity from liability and suit in a
number of circumstances.  City of San Antonio v. Hartman, 201 S.W.3d
667, 671–72 (Tex. 2006).  However, the Act includes a subchapter entitled
“Exceptions and Exclusions” listing circumstances in which the waiver of
immunity does not apply.  Id.  One of these exceptions is found in
section 101.055(2) governing emergency situations.  This section provides that
the TTCA “does not apply to a claim arising ... from the action of an employee
while responding to an emergency situation if the action is in compliance with
the laws and ordinances applicable to emergency action, or in the absence of
such law or ordinance, if the action is not taken with conscious indifference
or reckless disregard for the safety of others …”  Tex. Civ. Prac. & Rem.
Code Ann. § 101.055(2).

The law applicable here is found in section 546.005
of the Texas Transportation Code, which provides that while a driver of an
emergency vehicle has a duty to drive “with appropriate regard for the safety
of all persons,” he is not relieved of “the consequences of reckless disregard
for the safety of others.  Smith v. Janda, 126 S.W.3d 543, 545 (Tex.
App.—San Antonio 2003, no pet.) (quoting Tex. Transp. Code Ann. § 546.005). 
Therefore, a governmental entity is immune from suits to recover damages
resulting from the emergency operation of an emergency vehicle unless the
operator of the vehicle acted recklessly; that is, committed an act the
operator knew or should have known posed a high degree of risk of serious
injury.  Green v. Alford, 274 S.W.3d 5, 22–23 (Tex. App.—Houston [14th
Dist.] 2008, pet. filed).

Having reviewed the evidence submitted by the
parties, we conclude there is a genuine issue of material fact as to whether
Officer Krupa’s conduct in responding to Detective Terry’s call for assistance
rises to the level of recklessness.  Officer Krupa’s affidavit testimony
reveals that he was subjectively aware that “exceeding the posted speed limit
increases the likelihood of a collision” and in the event of a collision, could
cause more severe damage and injury.  His testimony also demonstrates that
Officer Krupa was subjectively aware “that proceeding through a red light or
stop sign without coming to a complete stop and waiting increases the risk of a
collision with a vehicle that is traveling through the intersection.”  In his
testimony, Officer Krupa then listed several factors that he believed reduced
the risk of becoming involved in a collision during his response to Detective
Terry’s call for assistance.  Among these was his testimony that he “was
driving a marked, easily recognizable police patrol vehicle and operating
emergency lights and a siren at the time of the accident.”  In addition, both Captain
Capps and Detective Terry recognized the risks involved in Officer Krupa’s
decision to respond to Detective Terry’s call for assistance.  Then, relying on
the same factors cited by Officer Krupa, including his testimony that he
operated his emergency lights and siren throughout his response to Detective
Terry’s call for assistance, they opined that Officer Krupa’s conduct was not
reckless.  As discussed above in dealing with Missouri City’s first issue, we
have determined there are fact issues on: (1) Officer Krupa’s use of his
emergency lights and siren; (2) whether Officer Krupa had the green light as he
approached the intersection; and (3) whether his vision was blocked by traffic
on Cartwright Road.  Therefore, since there are fact issues on whether or not
Officer Krupa’s conduct was reckless, we overrule Missouri City’s second
issue.  City of Pasadena, 297 S.W.3d at 534–35; see Green,
274 S.W.3d at 26.

IV.      Notice

In its third issue, appellant contends both appellees
failed to meet the notice requirement under the TTCA.  In addition to arguing
she met Missouri City’s 30-day notice deadline, Passante contends Missouri City
had actual notice.  The Robinson appellees contend Missouri City had actual
notice and also argue the Missouri City 30-day notice requirement is unreasonable.


Section 101.101(a) provides that a governmental unit
is entitled to notice of a claim within six months of the date of the
underlying incident.  The notice must describe the damage or injury claimed,
the time and place of the incident, and the incident.  Tex. Civ. Prac. &
Rem. Code Ann. § 101.101(a).  The purpose of the notice provision is to ensure
that claims are promptly reported so that a governmental entity may investigate
the merits of a claim while the facts are fresh and conditions remain substantially
the same.  Tex. Dep’t of Criminal Justice v. Simons, 140 S.W.3d 338, 344
(Tex. 2004).  Section 101.101(b) allows a city to provide for its own notice
requirements.  Tex. Civ. Prac. & Rem. Code Ann. § 101.101(b).  These
requirements must be reasonable.  City of Houston v. Torres, 621 S.W.2d
588, 591 (Tex. 1981).

Finally, section 101.101(c) provides an exception to
the formal notice requirement if the governmental unit has actual notice.  Tex.
Civ. Prac. & Rem. Code Ann. § 101.101(c).  Under this exception, “actual
notice” requires that a governmental unit have knowledge of the information it
is entitled to be given under section 101.101(a) and a subjective awareness
that its fault produced or contributed to the claimed injury.  Brazoria
County v. Colquitt, 282 S.W.3d 582, 586 (Tex. App.—Houston [14th Dist.]
2009, pet. filed).  Actual notice is normally a question of fact, which if
disputed will preclude summary judgment.  Wesela v. The University of Texas
Medical Branch at Galvestion, 899 S.W.2d 292, 294 (Tex. App.—Houston [14th
Dist.] 1995, no writ).

We conclude the evidence establishes that there is at
least a fact issue on whether Missouri City had actual notice as required by
the TTCA.  It is undisputed that Missouri City had actual notice that the wreck
occurred, that it involved a Missouri City police vehicle, and that people were
injured as a result of the wreck.  The summary judgment evidence includes the
fact that, as a result of his investigation, Trooper Barton concluded that
Officer Krupa contributed to the wreck because he disregarded a stop and go
signal.  In addition, the Missouri City Police Department conducted an
investigation of the collision and concluded Officer Krupa’s “speed at the time
of the accident did not allow [him] to properly clear the intersection.”  The
accident review board further concluded Officer Krupa was negligent and contributed
to the accident.  The Missouri City chief of police accepted the investigation’s
findings, disciplined Officer Krupa, and issued a written reprimand to him. 
Finally, the appellate record contains a January 4, 2005 letter to Passante’s
attorney from Fleetwood Claim Services, Inc.  The letter provides, in part,
“[w]e are the claims representatives that have been assigned by the Texas Municipal
League-Intergovernmental Risk Pool to assist with the liability investigation
and handling of this claim on behalf of their Fund Member, the City of Missouri
City.”  Collectively, this information leads us to conclude that there is a
fact issue on whether Missouri City had actual notice.  Since there is a fact
issue on whether Missouri City had actual notice for purposes of section
101.101(c) of the TTCA, we overrule Missouri City’s third issue on appeal.[10]

Conclusion

            Having overruled
Missouri City’s issues on appeal, we affirm the trial court’s denial of
Missouri City’s Plea to the Jurisdiction and Motion for Summary Judgment and remand
this case to the trial court for further proceedings consistent with this
opinion.

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Anderson and Christopher.









[1] In December 2004, Russell
Terry was a Missouri City police officer.  Subsequent to that time, he was
promoted to detective.  To avoid confusion, we will refer to Terry as Detective
Terry throughout the remainder of this opinion.  Detective Terry had engaged in
a pursuit of the suspects in the stolen vehicle.  Eventually the stolen vehicle
came to a stop, the driver fled, leaving two suspects in the vehicle. 
Detective Terry broadcast his call for assistance due to his concerns over (1)
a single officer handling multiple suspects, and (2) the potential reaction to
the situation by a gathering crowd of local citizens.





[2] While the Missouri City
Police Department’s policies on response to calls as well as pursuits are found
in the appellate record, there is no written policy on the procedure for
responding to an “officer assist” call in that record. 





[3] Cartwright Road is a four
lane road.  It has two lanes of traffic going in each direction divided by a
raised median.





[4] Officer Krupa testified
he never came to a complete stop and does not know how much time it would have
delayed him in arriving at Detective Terry’s location if he had come to a
complete stop at the intersection.





[5] Missouri City Police
Sergeant Michael Berezin stated in his report following the crash that Officer
Cook was selected to work on retrieving the videotape because he had
“electronics training from his prior military experience’ and Officer Brown was
selected because he had a “background as a video technician.” 





[6] The disciplinary
significance of three points is not explained in the appellate record.





[7] The Robinson appellees
also filed suit against Passante.





[8] While Missouri City
argues the video was damaged as a result of the wreck and therefore has no
impact on the good faith analysis, we disagree.  Instead, we believe there is a
fact issue as to whether the video shows only a portion of Officer Krupa’s
emergency response (1) because the remainder of the video was damaged as a
result of the wreck or Officers Brown and Cook’s efforts to retrieve the tape;
or (2) because Officer Krupa was only using his emergency lights and siren
intermittently. 





[9] Because there are fact
issues underlying the question of whether Officer Krupa acted in good faith
when he responded to Detective Terry’s call for assistance, we need not reach
Missouri City’s challenge to the affidavit testimony of Passante’s expert
witness, Chief Moore.  See City of San Antonio v. Garcia, 974 S.W.2d
756, 758 (Tex. App.—San Antonio 1998, no pet.) (declining to examine adequacy
of controverting summary judgment affidavit in light of disputed fact issues). 





[10] Because we have
determined there is a fact issue on whether Missouri City had actual notice, we
need not address Missouri City’s challenges to the content and timeliness of appellees’
notice letters or the Robinson appellees’ contention that Missouri City’s
written notice requirements are unreasonable.