**CITY OF PASADENA,**
**Texas, Appellant**

v.

**Steven BELLE and James**
**West, Appellees.**

No. 14–08–00531–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 1, 2009.

Joshua Nathaniel Bowlin, William S. Helfand, Kevin D. Jewell, Houston, TX, for appellants.

Kevin L. Hood, Luis Alberto Fabrega Jr., Robert S. Kwok, Houston, TX, for appellees.

Panel consists of Justices SEYMORE and SULLIVAN, and Visiting Justice RONDON.*

* The Honorable Reece Rondon, Judge of the 234th District Court of Harris County, partici-

## OPINION

KENT C. SULLIVAN, Justice.

This interlocutory appeal[1] arises from the trial court's denial of a plea to the jurisdiction filed by appellant, the City of Pasadena. Appellant asserts governmental immunity from a personal-injury lawsuit involving a Pasadena police officer who was involved in an automobile collision while responding to an emergency dispatch. The driver of the other vehicle, appellee James West, contends that Pasadena's immunity is waived because its employee, Officer Martin Hoffman, drove recklessly and did not act in good faith by speeding without activating his patrol car's emergency lights or siren.

Under current Texas law, Pasadena has not conclusively established its immunity from suit. Accordingly, we must affirm the trial court's order denying Pasadena's plea to the jurisdiction.

## I.

### STANDARD OF REVIEW

We review a trial court's ruling on a plea to the jurisdiction de novo. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex.2004). A defendant's jurisdictional plea may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. See id. at 226–28. When, as here, the defendant challenges the existence of jurisdictional facts, we must consider the relevant evidence submitted by the parties. See id. at 227. If that evidence raises a fact issue as to jurisdiction, the defendant's plea must be denied because the issue must be resolved by the trier of fact. See id. at 227–28. However, if the relevant evidence is undis-puted or fails to present a jurisdictional fact issue, the plea should be granted as a matter of law. Id. at 228. In reviewing the evidence, we are required to assume the truth of all evidence that favors the nonmovant, in this case, the plaintiff-appellee. See id.

## II.

### BACKGROUND

The automobile collision occurred on the morning of March 4, 2006 on Strawberry Road, a north-south street with two lanes traveling in each direction and a center turning lane. Hoffman, who was on patrol duty, was driving southbound on Strawberry when he received a police dispatch about a possible hostage situation taking place at a residence roughly one and one-half miles away from his current position.

After four other units had already accepted the assignment, Hoffman alerted the dispatcher that he was also available to respond to the emergency call. The first two response units were designated as "primary personnel," while Hoffman, the fifth responder, was assigned to serve in the role of "supporting personnel" as the third backup unit.

These designations apparently control the manner in which each unit is authorized to respond to an emergency call, according to the Pasadena Police Department's written policy and procedure manual. Thus, although primary personnel may respond to certain calls as "Emergency Traffic" by disregarding some traffic regulations, including posted speed limits, supporting personnel apparently do not enjoy the same privileges.

---

pating by assignment. See Tex. Gov't Code Ann. § 74.003(h) (Vernon 2005).

1. An interlocutory appeal may be brought from an order denying a governmental unit's plea to the jurisdiction. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon 2008).

Instead, Hoffman, as supporting personnel, was required to "respond in a fashion consistent with normal driving practices" or specifically notify the police dispatcher that he intended to deploy "Emergency Traffic" with the same rights as primary personnel.

Hoffman later testified that, because of his relative proximity to the crime scene, he believed he might be the first officer to arrive. Therefore, notwithstanding the restrictions apparently placed on him as "supporting personnel," he accelerated to a speed of almost twice the posted 35–mile–per–hour speed limit.[2] However, he did not activate his vehicle's emergency lights or siren, allegedly in violation of the following department policy:

> The PPD recognizes that police response to certain types of offenses ... may warrant rapid intervention without the use of audible and visual devices in order to achieve a tactical advantage.... In the event that a police officer elects to respond to an emergency call without the full and continuous utilization of both visual and audible vehicular warning devices, he must notify the Channel One police dispatcher who shall log the notification in the Computer Aided Dispatch System. In every case of this nature, the responding officer must be prepared to fully justify his actions.

The dispatch log reflects no such notification by Hoffman of his intent to proceed without activating his emergency lights or siren.

West, who had been driving northbound on Strawberry, was situated in the center turning lane. Having seen Hoffman's vehicle stopped at a red light, West believed he had adequate time to complete his left turn into a shopping center. However, because Hoffman did not utilize his lights or siren, West claims he was unaware that Hoffman had resumed driving and had accelerated to almost twice the posted speed limit. West executed a slow left turn in front of Hoffman, and the two vehicles collided.

Appellee Steven Belle, a passenger in West's car, sued Pasadena, West, and Hoffman for injuries allegedly sustained in the collision. West filed a cross-claim against Pasadena and Hoffman, and they likewise cross-claimed against him. Pasadena filed a plea to the jurisdiction contesting the existence of facts demonstrating the trial court's subject-matter jurisdiction to hear the lawsuit. The trial court denied Pasadena's plea without explaining its reasoning, leading to this interlocutory appeal.

## III.

### PASADENA'S CONTENTIONS

■ The City of Pasadena, as a municipality and political subdivision of the State, cannot be liable for its employees' acts unless its governmental immunity has been waived. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex.1994). Here, the parties agree that Pasadena's entitlement to immunity is governed by Section 101.021 of the Texas Tort Claims Act (the "TTCA"), which provides:

> A governmental unit in the state is liable for ... property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A) the property damage, personal injury, or death arises from the opera-

---

**2.** Under the applicable standard of review, we must take as true the testimony of Michael Yosko, appellees' retained expert, who esti-

mated the speed of Hoffman's vehicle at between sixty-three and sixty-nine miles per hour. *See Miranda*, 133 S.W.3d at 228.

tion or use of a motor-driven vehicle or motor-driven equipment; and

(B) *the employee would be personally liable to the claimant according to Texas law* [.]

Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 2005) (emphasis added). There is no dispute that appellees' claims arise from the use of a motor vehicle and that Hoffman acted within the scope of his employment with Pasadena.

Instead, the parties' disagreement focuses on the question of whether Hoffman could "be personally liable to the claimant[s] according to Texas law." *See id.* Pasadena presents two arguments in support of its claim that Hoffman could not be personally liable to the appellees. First, it contends Hoffman is entitled to official immunity, under the common law, because the evidence conclusively establishes that he responded to the emergency call in good faith. *See Chambers,* 883 S.W.2d at 658 ("If the officers are immune from suit, they are not 'personally liable to the claimant according to Texas law.'"). Second, Pasadena claims that Hoffman did not act with reckless disregard for the safety of others, a requisite finding before liability may be imposed upon one who responds to an emergency call in an emergency vehicle. *See generally* Tex. Transp. Code Ann. §§ 546.001–.005 (Vernon 1999 & Supp. 2008). We will address each of these arguments in turn.

### IV.

#### OFFICIAL IMMUNITY

■ Because official immunity is an affirmative defense, the burden rests on the defendant to establish all of the elements of the defense. *Chambers,* 883

S.W.2d at 653. Under that defense, a government employee may be immune from a lawsuit that arises from (1) the performance of his discretionary duties (2) in good faith, (3) provided he was acting within the scope of his authority. *Id.* Here, appellees concede the first[3] and third elements, leaving us to decide only whether Pasadena conclusively established Hoffman's good faith. *See id.; Pruett v. City of Amarillo,* 947 S.W.2d 718, 722 (Tex.App.-Amarillo 1997, writ denied).

Under current Texas law, the determination of good faith consists of a balancing test that may often turn upon the artful drafting of affidavits. Here, Officer Hoffman's affidavit, which we will discuss shortly, does not address all of the factors mandated by the prevailing balancing test, and therefore does not conclusively demonstrate his good faith. Accordingly, we affirm the trial court's decision. We begin, however, with a discussion of current Texas law with respect to good faith.

■ In the context of official immunity, "good faith" is defined in a counterintuitive fashion because it refers to a standard of *objective* legal reasonableness that apparently disregards the police officer's *subjective* state of mind. *See Wadewitz v. Montgomery,* 951 S.W.2d 464, 466 (Tex.1997) (citing *Chambers,* 883 S.W.2d at 656). Under this standard, an officer must prove that a reasonably prudent officer might have believed his actions were justified under the circumstances. *Wadewitz,* 951 S.W.2d at 466; *Chambers,* 883 S.W.2d at 656–57. By contrast, to rebut an officer's *prima facie* showing of good faith, a plaintiff must establish that "no reasonable person in the defendant's position could have thought

---

**3.** *See also Chambers,* 883 S.W.2d at 655 (holding that police officer's decision to pursue suspect involves a discretionary act).

the facts were such that they justified defendant's acts." *Chambers*, 883 S.W.2d at 657 (citations omitted).

■ Under *Chambers* and *Wadewitz*, that good-faith standard of reasonableness is subject to a balancing test that weighs the *need* for the officer's actions versus the *risks* entailed by such conduct. Thus, in the context of a police-pursuit case, an officer is said to have acted in good faith if "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." *Chambers*, 883 S.W.2d at 656. Then, in *Wadewitz*, the Court adapted the *Chambers* good-faith balancing test for use in emergency-response cases:

> [G]ood faith depends on how a reasonably prudent officer could have assessed both the *need* to which an officer responds and the *risks* of the officer's course of action, based on the officer's perception of the facts at the time of the event. ⋅ The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns[.]

*Wadewitz*, 951 S.W.2d at 467 (citing *Chambers*, 883 S.W.2d at 656).

■ A defendant cannot establish good faith, nor can a plaintiff controvert a showing of good faith, simply by offering an expert's conclusory statement that a reasonable officer could or could not have taken a particular action. *Wadewitz*, 951 S.W.2d at 466. Arguably, such evidence might prove or disprove negligence.[4] However, mere negligence is not, and should not be, the standard for visiting liability upon a law-enforcement officer who must exercise discretion for the protection of the public. *See Univ. of Houston v. Clark*, 38 S.W.3d 578, 584 (Tex. 2000); *Chambers*, 883 S.W.2d at 655 ("The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently."). Thus, instead of setting forth what a reasonable officer could or should have *done*, an expert giving testimony regarding good faith must discuss what a reasonable officer could have *believed*, based on the officer's perception of the facts at the time of the event, and must be substantiated with reference to both the "need" and "risk" aspects of the *Chambers* balancing test. *See Wadewitz*, 951 S.W.2d at 466–67. Further, the facts of the case may require the expert to provide a continuing assessment of the "need" and "risk" factors, because "emergency responses and police pursuits may involve rapidly changing circumstances." *Clark*, 38 S.W.3d at 582–83.

With these considerations in mind, we must first determine whether Pasadena met its initial burden to prove Hoffman's good faith under the prevailing test. *See id.* at 588. If not, we need not consider whether appellees produced evidence sufficient to controvert a finding of good faith. *See id.* To support its jurisdictional plea,

---

4. *See 20801, Inc. v. Parker,* 249 S.W.3d 392, 398 (Tex.2008) (defining "negligence" in terms of what a reasonably prudent person would or would not have *done* under the same or similar circumstances).

Pasadena supplied an affidavit from Hoffman explaining the reasons he chose to accelerate his vehicle without activating the emergency lights or siren, and stating that he responded to the emergency call in good faith.[5]

■■■■ We begin with the "need" aspect of the good-faith test, which is informed by factors including the (1) seriousness of the crime or accident to which the officer responds, (2) whether the officer's immediate presence is necessary to prevent injury or death or to apprehend a suspect, and (3) the alternative courses of action, if any, that may have been available to achieve a comparable result. *Wadewitz*, 951 S.W.2d at 467. Therefore, we will apply each of these factors to the evidence presented.

### 1. Seriousness of the Crime

Both Hoffman's affidavit and the written dispatch log speak to the seriousness of the crime that prompted the emergency call. The incident involved a possible hostage situation in which the suspect was reportedly intoxicated, mentally unstable, armed, and dangerous. In addition, the suspect was said to have threatened to kill his girlfriend if she tried to leave the house. Therefore, the evidence demonstrates a serious emergency situation that warranted an immediate response from law enforcement.

### 2. Necessity of the Officer's Immediate Presence

As to the second "need" factor, appellees acknowledge that the possible hostage situation merited a quick response from *some* officers but contend that, because Hoffman

was designated as "supporting personnel," *his* immediate presence was not immediately necessary. However, notwithstanding the role internally assigned by the police dispatcher, Hoffman testified that he was close to the crime scene and therefore expected to arrive before the other officers. Accordingly, his testimony is sufficient to show that a reasonable officer could have believed *his* immediate presence was necessary to protect the hostage from possible injury or death, or to apprehend the suspect. *See id.*

### 3. Alternative Courses of Action to Achieve Comparable Result

■■■■ Finally, to establish good faith under *Wadewitz*, Hoffman was required to show that he considered alternative courses of action, if any, that were available to accomplish a comparable result. *See id.; Clark*, 38 S.W.3d at 587–88. That is, although Hoffman justified his decision to respond quickly to the possible hostage situation, he must also establish good faith in the *manner* in which he chose to respond. *See Pruett*, 947 S.W.2d at 723 ("[T]he manner in which an act is performed also factors into the good faith equation."). As the Amarillo Court of Appeals explained, in a police-pursuit situation.

> At least two decisions are involved; whether to act and then how to act. Though arising from a common impetus, they are nonetheless distinct acts. And, since each may proximately cause injury to others, the actor's good faith with regard to each must be established.

---

5. Pasadena also submitted affidavits from Michael Massey and Kenneth Mack, the police chiefs for the Pasadena and Galveston police departments, respectively. However, neither affidavit contains a substantive discussion of the pertinent factors that is required under *Wadewitz. See Wadewitz*, 951 S.W.2d at 466–67. Instead, each witness indicates that he has read Hoffman's affidavit and agrees that a reasonably prudent officer could have believed the facts justified his conduct. Because these conclusory affidavits do not contribute meaningfully to Hoffman's good-faith discussion, we do not refer to them in our analysis. *See id.*

Thus, when complainants allege ... that the officer was negligent in both deciding to pursue and in pursuing in the way he did, it is incumbent upon their opponent to conclusively prove that both acts were undertaken in good faith.

*Id.*

Here, appellees have questioned Hoffman's alleged decision to accelerate to almost twice the posted speed limit without activating his emergency lights or siren. In his affidavit, Hoffman attempts to explain that conduct:

> I determined it was necessary and appropriate to increase my speed and not activate the audible or visual signals on my police vehicle because I believed that if the suspect had knowledge of my presence, he would: (1) destroy or lose evidence of the suspected felony; (2) end the suspected continuing felony before I obtained sufficient evidence to establish grounds for the arrest; or (3) evade apprehension before my arrival. In exercising my discretion, my determination was guided by the City of Pasadena's policies and procedures regarding emergency responses, the laws and ordinance[s] applicable to emergency responses, and my perception of the events as they occurred at that time.

As Hoffman alludes, in some circumstances the Texas Transportation Code permits an officer to exceed the speed limit or respond without activating his emergency lights or siren. *See* Tex. Transp. Code Ann. §§ 546.001(3), 546.004(c) (Vernon 1999). The Pasadena Police Department policy manual contains a similar provision that states, "The PPD recognizes that police response to certain types of offenses such as robberies in progress, may warrant rapid intervention without the use of audible and visual de-

vices in order to achieve a tactical advantage...." [6] However, these provisions do not completely absolve the officer of the duty to consider the safety of others when driving. *See id.* §§ 546.001(3) (allowing emergency driver to exceed maximum speed limit "*as long as the operator does not endanger life or property* ") (emphasis added), 546.005(2) (Vernon 1999). Rather, to demonstrate good faith in this legal context, Hoffman was required to show that he considered the availability of other courses of action that might have produced the desired result—that is, arriving at the crime scene without alerting the suspect of his presence. *See Wadewitz,* 951 S.W.2d at 467; *Clark,* 38 S.W.3d at 587–88.

Hoffman's affidavit is lacking because he failed to discuss alternatives for his decision to speed without activating emergency lights and siren. In some circumstances, an officer may establish good faith even though he cannot thoroughly analyze all of the need and risk factors. *Clark,* 38 S.W.3d at 583. However, this case does not appear to fall in that category because appellees' retained expert, Michael Yosko, suggested several alternatives a reasonably prudent officer should have considered that might have produced a comparable result. Those alternatives included (1) activating Hoffman's emergency lights and siren until he had arrived at, or was near to, the crime scene; (2) responding to the emergency quickly but within the legal speed limit; or (3) choosing less populated side streets so as to decrease the amount of traffic he might encounter.

Another alternative that is implied by Yosko's affidavit, but not addressed by Hoffman, entailed the use of his emergency lights *without* the siren. As Yosko notes, and an area map confirms, there is no clear line-of-sight from Strawberry Road to the crime scene. In addition,

---

**6.** Capitalization normalized.

because the event occurred during broad daylight, Yosko confirms that the suspect could not have seen Hoffman's emergency lights, even had they been activated, when he responded to the dispatch. By contrast, West testified that he would not have turned in front of Hoffman had the latter's emergency lights been activated. Thus, the record presented indicates that Hoffman's emergency lights might have alerted West, but not the suspect, of Hoffman's approaching vehicle.

Because Hoffman did not discuss the availability of alternatives in his affidavit, Pasadena's evidence does not satisfy the *Chambers* balancing test. *See Clark,* 38 S.W.3d at 588 (declining to find good faith because officer's affidavit did not discuss alternative courses of action); *Wadewitz,* 951 S.W.2d at 467 (refusing to find good faith because officer did not discuss all of the *Chambers* factors); *see also Junemann v. Harris County,* 84 S.W.3d 689, 694–95 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (holding that officer who failed to activate overhead emergency lights did not demonstrate good faith). Because Hoffman's affidavit suffers from the same deficiency found in the government's evidence in *Clark,* Pasadena's appeal must share its fate. *See Clark,* 38 S.W.3d at 588.

Under current law and on the record presented, we are compelled to conclude that Pasadena has not conclusively demonstrated Hoffman's good faith. *See id.* Accordingly, we overrule Pasadena's first issue.

## V.

### LIABILITY OF EMERGENCY RESPONDERS

■ Pasadena's second issue arises from chapter 546 of the Texas Transporta-

tion Code, which governs the conduct of emergency responders. Under section 546.005, those who respond to emergency calls in "authorized emergency vehicle[s]"[7] should avoid negligent behavior but are subject to liability only if they act with reckless disregard for the safety of others. *See* Tex. Transp. Code Ann. § 546.005 (Vernon 1999); *Green v. Alford,* 274 S.W.3d 5, 22 (Tex.App.-Houston [14th Dist.] 2008, pet. filed) (citing *City of Amarillo v. Martin,* 971 S.W.2d 426, 431 (Tex. 1998)). Pasadena contends appellees have not demonstrated that Hoffman drove recklessly and, building on that argument, concludes its immunity has not been waived under TTCA section 101.021 because Hoffman cannot be personally liable to the claimants absent a showing of recklessness.

Because we are required to assume the truth of the evidence favoring appellees,[8] we hold that a fact issue exists under section 546.005. Therefore, we must affirm the trial court's denial of Pasadena's plea to the jurisdiction. *See Miranda,* 133 S.W.3d at 227–28.

■ In the context of an emergency responder's liability under section 546.005, proof of "reckless disregard" requires the plaintiff to show that the defendant committed an act or omission which he knew or should have known posed a high degree of risk of serious injury. *See Martin,* 971 S.W.2d at 430; *Green,* 274 S.W.3d at 23. Generally, both sides analyze Hoffman's allegedly reckless conduct under some of the same operative facts, including his admission of the risks that accompanied his decision to speed without activating emergency lights or siren:

I recognized before I initiated my response, that there was some risk, as

7. The term "authorized emergency vehicle" includes police vehicles. *See* Tex. Transp. Code Ann. § 541.201(1)(A) (Vernon 1999 & Supp. 2008).

8. *See Miranda,* 133 S.W.3d at 228.

there always is, inherent anytime a police officer makes the decision to increase his speed and not activate either the audible or visual signals responding to an emergency situation. Indeed, this case was no exception. I recognized the possibility existed that if I increased my speed without activating the audible or visual signals on the police vehicle, my vehicle could increase the risk of a collision causing property damage and/or injury to another driver, bystander or property owner. I considered each of these potential risks before I initiated the pursuit and continually re-evaluated them up until the time of the accident.

Despite this subjective awareness that his actions posed a risk of injury to civilians, Hoffman concludes the risk was not *serious* because traffic on Strawberry Road was relatively light.

Appellees' expert reached the opposite conclusion, that is, Hoffman knew his conduct presented a high degree of risk of physical harm to the public but proceeded in reckless disregard of that risk. To support that opinion, Yosko cited all of the following considerations:

- Under Texas law, an officer may not exceed the posted speed limit unless he can do so without endangering life or property. *See* Tex. Transp. Code Ann. § 546.001(3). Nevertheless, Hoffman accelerated his vehicle to almost twice the posted 35–mile–per–hour speed limit.

- Generally accepted standards of law-enforcement conduct indicate that an officer who greatly exceeds the speed limit *must* activate his emergency lights or siren.

- In addition, the Transportation Code and the policies and procedures of the Pasadena Police Department generally require a responding officer to use audible or visual signals when responding to an emergency call. *See id.* § 546.003 (Vernon 1999).

- Hoffman allegedly violated Pasadena's policies by failing to notify the police dispatcher of his intent to invoke "Emergency Traffic" without utilizing his lights or siren.

- These rules exist for the safety of the public because, as Hoffman admitted in his deposition, officers have a responsibility to use their emergency lights and siren to advise the public of their intention to violate traffic laws.

- In his deposition, Hoffman confirmed he knew that operating a police car at an excessive rate of speed, without activating lights or siren, was a dangerous act that could cause serious injury or death to the public.

- Hoffman could have selected one of several alternative courses of action that would have lessened or eliminated that risk of serious injury to the public, but chose not to do so.

In light of this testimony, a fact issue exists. *See Green,* 274 S.W.3d at 26 (holding that operator's excessive speed supported finding of recklessness); *City of Amarillo v. Pruett,* 44 S.W.3d 702, 706 (Tex.App.-Amarillo 2001, pet. denied) (permitting factfinder to consider officer's speed in determining recklessness). Therefore, on the record presented, we are compelled to overrule Pasadena's second issue and affirm the trial court's denial of its plea to the jurisdiction. *See Miranda,* 133 S.W.3d at 227–28.

## CONCLUSION

Finding no merit in the issues presented, we affirm the judgment of the trial court.