**Affirmed and Memorandum Opinion filed May 7, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00231-CV

---

## LINDA JACKSON AND TERRY JACKSON, Appellants

### V.

## CITY OF BAYTOWN, Appellee

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2013-09168**

---

## M E M O R A N D U M   O P I N I O N

This is a personal-injury case arising from a police pursuit. Appellants Linda and Terry Jackson were injured when a suspect fleeing from a police car driven by Baytown Police Officer Aaron Corrales crashed his pickup truck into their car. The Jacksons sued Aaron Corrales, in his official capacity as an officer with the Baytown Police Department, and the City of Baytown for negligence and

negligence per se.[1] The Jacksons claimed that Baytown waived its sovereign immunity under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011). Baytown filed a plea to the jurisdiction and motion for summary judgment, asserting sovereign immunity derived from Corrales's official immunity. The trial court granted Baytown's plea to the jurisdiction and motion for summary judgment. This appeal followed.

The Jacksons present two issues on appeal. In their first issue, the Jacksons argue that Baytown is not protected from liability by sovereign immunity because it did not conclusively establish that Corrales was protected by official immunity. In their second issue, the Jacksons argue in the alternative that their summary-judgment evidence was sufficient to controvert Baytown's. Because Baytown's evidence conclusively established the good-faith element of their official-immunity defense and the Jacksons' evidence did not raise a fact issue on good faith, we affirm the trial court's order granting Baytown's motion for summary judgment.[2]

## I.     Standard of Review—Summary Judgment

We review the trial court's rulings on a motion for summary judgment de novo. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. 2005). As the movant, Baytown had to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *White v. Tackett*, 173 S.W.3d 149, 151 (Tex. App.—Fort Worth 2005, no pet.). We view the summary-judgment evidence and its reasonable inferences in the light most favorable to the respondents, the Jacksons. *Tackett*, 173 S.W.3d at 151. We disregard conflicts in the evidence and accept as true evidence favorable to the

---

[1] The Jacksons nonsuited Corrales.

[2] Because summary judgment in Baytown's favor was proper, we need not determine whether the court erred in granting Baytown's plea to the jurisdiction. *See* Tex. R. App. P. 47.1.

2

respondents. *Id.* Evidence favorable to the movant will not be considered unless it is uncontroverted. *Id.* at 151–52. Uncontroverted evidence from an interested witness does nothing more than raise a fact issue unless it is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *Id.* at 152.

A defendant is entitled to summary judgment on an affirmative defense such as official immunity if the defendant conclusively proves all the elements of the affirmative defense. *Id.* The defendant must present evidence establishing each element of the affirmative defense as a matter of law. *Id.*

## II.    Applicable Law—Official Immunity

Official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously perform their official duties. *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002). Sovereign immunity shields a governmental employer from vicarious liability when official immunity shields the governmental employee from liability. *Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.021. A governmental employee is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith. *Clark*, 38 S.W.3d at 580. To obtain summary judgment on the basis of official immunity, a governmental employee must conclusively establish each of these three elements. *Id.* The Jacksons dispute only the third element—good faith.

To establish good faith in a police pursuit case, an officer must conclusively prove that a reasonably prudent officer in the same or similar circumstances could agree that the need to immediately apprehend the suspect outweighed the risk of harm to the public in continuing the pursuit, taking into account all the factors of

3

*Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997). *Clark*, 38 S.W.3d at 583. The officer must prove only that a reasonably prudent officer might have believed he should have continued the pursuit. *Clark*, 38 S.W.3d at 581. An officer acts in bad faith only if he could not have reasonably reached the decision in question. *Id.*

> [G]ood faith depends on how a reasonably prudent officer could have assessed both the *need* to which an officer responds and the *risks* of the officer's course of action, based on the officer's perception of the facts at the time of the event. The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. In the context of an emergency response, need is determined by factors such as [1] the seriousness of the crime or accident to which the officer responds, [2] whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and [3] what alternative courses of action, if any, are available to achieve a comparable result. The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: [1] the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), [2] the likelihood that any harm would occur, and [3] whether any risk of harm would be clear to a reasonably prudent officer.

*Wadewitz*, 951 S.W.2d at 467 (internal citations omitted).

Police pursuits require a continued assessment of need and risk because information known to a public official may change rapidly and offer little time for deliberation. *Clark*, 38 S.W.3d at 582–83. An officer is not required to affirmatively negate the existence of all circumstances or risks that did not actually exist. *Id.* at 586. The balancing of need versus risk does not prevent the officer from pursuing a suspect for traffic violations or in residential or other populated or high traffic areas. *Id.* at 583.

If the officer conclusively establishes good faith, the plaintiff must

controvert the officer's evidence to avoid summary judgment. To rebut an officer's prima facie showing of good faith, a plaintiff must establish that no reasonable person in the defendant's position could have thought the facts were such that they justified the defendant's acts. *City of Pasadena v. Belle*, 297 S.W.3d 525, 530–31 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "If officers of reasonable competence could disagree on this issue, the officer acted in good faith as a matter of law." *Telthorster*, 92 S.W.3d at 465. The plaintiff cannot controvert the defendant's good-faith evidence by showing that the defendant was negligent or that reasonably competent officers could disagree on the issue. *Id.* at 467. The plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 657 (Tex. 1994).

### III. Discussion

**A. The evidence presented by Baytown conclusively established that Corrales acted in good faith.**

#### 1. Baytown's Summary-Judgment Evidence

In this case, the facts related to what occurred during the attempted traffic stop and ensuing high-speed pursuit are essentially undisputed because the dashboard camera footage was part of the summary-judgment evidence. In addition to the video, Baytown provided: Officer Corrales's affidavit; an excerpt from Corrales's deposition testimony; the General Offense Report for the fleeing suspect, which included Corrales's narrative of what happened; the deposition testimony of Officer Chad Johnson; findings from a Pursuit Incident Data Form submitted by Corrales's supervisor, Officer Mark Freeman; and the affidavit of Freeman. Officer Johnson did not observe the pursuit and his testimony contained little on the subject of the actual circumstances faced by Corrales; therefore,

5

Johnson's testimony has little bearing on whether Officer Corrales acted in good faith. Although a prima facie showing of good faith in a summary-judgment setting can be established from affidavits of co-defendants or supervisors, *Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 688 (Tex. App.—Amarillo 1998, pet. denied), we need not consider Freeman's affidavit because we conclude Corrales's affidavit, his deposition testimony, his written narrative as found in the offense report, and the video footage are sufficient to establish that he acted in good faith.[3] *See City of La Joya v. Herr*, 41 S.W.3d 755, 761 (Tex. App.—Corpus Christi 2001, no pet.) (good faith can be established by officer's own testimony). This evidence shows the following:

At 11:34 p.m. on Friday, March 12, 2012, Corrales was on patrol traveling south on Garth Road when he clocked a northbound pickup truck traveling twenty miles per hour faster than the posted speed limit. The weather was clear, visibility was good, and the roads were dry. Corrales turned his car around and initiated a routine traffic stop. He activated his emergency lights and sirens and accelerated towards the pickup truck. The driver, who was later identified as Codey Krustchinsky, pulled over and slowed down as if to stop but then accelerated away from Corrales. Corrales notified dispatch and called pursuit of the fleeing pickup truck.

During his flight, Krustchinsky performed a series of maneuvers that were illegal and dangerous to himself, his passenger, and others on the road. He ran multiple red lights and a stop sign. He drove on the wrong side of the road. He passed cars on the shoulder. According to Corrales, Krustchinsky reached speeds in excess of 100 miles per hour. Based on Krustchinsky's behavior, Corrales

---

[3] Because we do not consider Freeman's affidavit in determining whether Corrales acted in good faith, we do not reach the Jacksons' sub-issue pertaining to the admissibility of Freeman's affidavit. *See* Tex. R. App. P. 47.1.

determined that Krustchinsky might be intoxicated and that he posed a serious threat to public safety. Corrales concluded that Krustchinsky needed to be stopped.

Corrales noted in his affidavit that he considered the traffic conditions and the number of pedestrians present. The video shows that no pedestrians were present at any time during the pursuit. The video also shows that traffic was moderate during the initial phases of the pursuit. The pursuit began in a commercial area that was well lit. Corrales asserted that he considered terminating the pursuit, but he observed a decrease in the amount of traffic after he and Krustchinsky passed the intersection of Garth Road and Interstate 10. Based on the change in traffic conditions, Corrales decided to continue the pursuit.

Corrales testified that he approached Krustchinsky's pickup to obtain the license plate number but was unable to acquire a positive identification. Corrales stated that he believed Harris County law-enforcement personnel were deploying spike strips, but he never received confirmation that these alternative measures had in fact been deployed.

The pursuit continued northbound on Garth Road until Garth Road intersected with F.M. 1942. Krustchinsky turned west onto F.M. 1942, running a stop sign in the process. The video shows that Corrales slowed down at the stop sign before proceeding through the intersection. Near the end of the pursuit, Krustchinsky attempted to pass two cars. He passed the first car on the westbound shoulder and tried to pass a second car, which was driven by the Jacksons, by veering from the westbound shoulder into the eastbound traffic lanes. During this maneuver, Krustchinsky rear-ended the Jacksons' car, sending it careening off the road and seriously injuring the Jacksons. Corrales was far enough behind Krustchinsky that he avoided the accident. Krustchinsky stopped his pickup shortly after the collision, and Corrales detained Krustchinsky and his passenger. The

pursuit lasted approximately six minutes.

### 2. *Analysis*

The evidence presented by Baytown shows that Corrales assessed the need for police intervention. Corrales observed Krustchinsky speeding in moderate traffic in a commercial area late on a Friday night. Corrales initiated a traffic stop. Krustchinsky pulled over as if to stop but then accelerated away from Corrales. Krustchinsky violated multiple traffic laws in an effort to evade Corrales. According to Corrales, Krustchinsky was driving recklessly. Corrales suspected that Krustchinsky was intoxicated. Krustchinsky's commission of multiple traffic violations that put other drivers at risk and—given the day of the week and the time of night—the possibility that Krustchinsky was intoxicated demonstrated a need for Corrales to apprehend Krustchinsky. *See Tex. Dep't of Public Safety v. Rodriguez*, 344 S.W.3d 483, 496 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (indicating that officer's assertion that suspect was driving recklessly could satisfy the need aspect of the balancing test); *see, e.g.*, *City of San Antonio v. Trevino*, 217 S.W.3d 591, 595–96 (Tex. App.—San Antonio 2006, no pet.) (need aspect satisfied when officer saw a car parked in front of a house known for drug and stolen-vehicle trafficking; the car sped away as the officer approached to investigate; and the officer later observed the suspect violate numerous traffic laws).[4]

---

[4] *See also Mem'l Villages Police Dep't v. Gustafson*, No. 01-10-00973-CV, 2011 WL 3612309, at *6 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op.) (need aspect satisfied when the fleeing suspect was unidentified and a person of interest in a string of burglaries); *Royal v. Harris Cnty.*, No. 14-08-00551-CV, 2010 WL 610604, at *4–*5 (Tex. App.—Houston [14th Dist.] Feb. 23, 2010, pet. denied) (mem. op.) (need aspect satisfied when officer observed a vehicle traveling the wrong direction on a toll road at a high rate of speed, believed the driver was intoxicated, and knew the driver had recently caused an accident); *City of Richmond v. Rodriguez*, No. 01-08-00471-CV, 2009 WL 884810, at *5 (Tex. App.—Houston [1st Dist.] April 2, 2009, no pet.) (mem. op.) (need aspect satisfied when officer observed a

The evidence shows that Corrales considered available alternatives. This factor may be satisfied when the evidence shows that the officer was unable to obtain the fleeing suspect's license plate number or otherwise identify the fleeing suspect. *See Clark*, 38 S.W.3d at 585; *Trevino*, 217 S.W.3d at 595–96; *Tackett*, 173 S.W.3d at 154. Here, Corrales testified that he approached Krustchinsky's vehicle but was unable to obtain a complete license plate number. Officer Corrales also considered the use of spike strips as another alternative means of apprehending Krustchinsky. He testified to requesting spike strips but was never told whether the spike strips were deployed. Finally, Corrales acknowledged during his deposition that ramming the suspect and requesting a roadblock were possible alternatives, but he noted that these methods were not available because they violated department policy.

The evidence shows that Corrales assessed the risks of the pursuit. Corrales acknowledged in his affidavit that pursuits present a risk to public safety. He stated that he considered the weather and driving conditions as well as the amount of traffic in deciding whether to pursue Krustchinsky. The video showed that visibility was good; the weather was clear; and the pavement was dry. When the pursuit commenced, the streets were well-lit and traffic was moderate. Corrales

---

motorcycle travelling at night without a headlight at a high rate of speed, posing a danger to himself, other motorists, and nearby property); *Tackett*, 173 S.W.3d at 154–55 (need aspect satisfied when officer considered (1) the fleeing suspect's speed, (2) unlawful attempts to evade detention for a mere traffic stop, (3) both suspects' appearances in comparison to the luxury car they were in, and (4) the high-crime nature of the area where the officer first observed the suspects); *City of Dallas v. Garcia*, No. 05-97-00805-CV, 1998 WL 130060, at *3–*4 (Tex. App.—Dallas March 24, 1998, no pet.) (not designated for publication) (need aspect satisfied when officers observed a car run a red light, believed the car might be stolen, and observed the car violate multiple traffic laws during the pursuit). *But see Loftin v. Morales*, 187 S.W.3d 533, 541–42 (Tex. App.—Tyler 2005, no pet.) (need aspect was not satisfied when officers pursued a speeding vehicle for twenty-seven minutes; believed the car was stolen; knew who the car was registered to and that the car was not reported stolen; and pursued the vehicle at high speeds through a neighborhood).

activated his lights and siren when the pursuit began and kept them on throughout the pursuit. The video also shows that Corrales consistently slowed down as he approached intersections with red lights or stop signs, indicating that he was considering the possibility of a collision and taking precautions to avoid one.

The evidence shows that Corrales continued to assess both the need and the risks of the pursuit. Corrales testified that he considered terminating the pursuit near the intersection of Garth Road and I-10. He chose not to do so because traffic significantly lightened after the intersection. The video confirms his testimony. During the course of the pursuit, Corrales observed Krustchinsky continue to violate traffic laws and put other drivers at risk—heightening the need to apprehend Krustchinsky.

In sum, the evidence shows that Corrales assessed both the need to apprehend the suspect and the risk of harm to the public when he initiated pursuit of the suspect and when he chose to continue the pursuit. *See Clark*, 38 S.W.3d at 581. Corrales addressed the need to stop the suspect based on the seriousness of the situation as a whole. He stated that he believed the suspect, who was unidentified at the time, might be intoxicated and was attempting to evade identification and arrest. Corrales discussed his evaluation of the risks to the public. He observed the weather and traffic conditions. Based on his evaluation of the needs and risks, Corrales believed the need to initiate and continue his pursuit of the suspect outweighed the risk of harm to the public. *See id.* at 586. The evidence regarding Corrales's ongoing balancing of both the need for and the risks associated with the pursuit conclusively establishes that a reasonable officer in Corrales's circumstances could have believed that the need to apprehend the suspect outweighed a clear risk of harm to the public in continuing, rather than terminating,

10

the pursuit. *See Tackett*, 173 S.W.3d at 155 (citing *Clark*, 38 S.W.3d at 587–88).[5]

We overrule the Jacksons' first issue.

## C. The evidence presented by the Jacksons did not raise a fact issue on Corrales's good faith.

We now consider whether the evidence presented by the Jacksons raised a fact issue on Corrales's good faith. The Jacksons had to show that no reasonable officer in Corrales's position could have believed that the circumstances justified his conduct. *Telthorster*, 92 S.W.3d at 466–67. To refute Baytown's evidence of good faith, the Jacksons rely primarily on the expert report and deposition testimony of Dr. George L. Kirkham and a Baytown Police Department General Order regarding emergency driving and pursuit procedures.

Dr. Kirkham opined in his report that "no reasonably competent law enforcement officer could possibly conclude that continued pursuit of the suspect vehicle in this case was justified based on the circumstances described by Officer Corrales himself and confirmed to exist by the dash camera mounted in his patrol car." In support of his conclusion, Dr. Kirkham first asserted that Corrales's actions violated the Baytown Police Department's pursuit policy. An officer's

---

[5] The Jacksons argue that Corrales's affidavit and deposition testimony are not valid summary-judgment evidence because his testimony is contradictory. They first contend Corrales's affidavit indicates that he suspected Krustchinsky was intoxicated, but Corrales's deposition testimony indicated that he "had no idea what offense [Krustchinsky] might have committed, if anything at all, other than evading the traffic stop for speeding." The Jacksons are mistaken. Corrales asserted in his deposition testimony and in his affidavit that he suspected Krustchinsky might be intoxicated.

The Jacksons next argue that Corrales's affidavit and deposition testimony were contradictory on the subject of his ability to identify Krustchinsky. The salient point in Corrales's affidavit and deposition testimony is that he attempted, but was unable, to identify Krustchinsky during the pursuit. On this record, we cannot say that Corrales's testimony was contradictory. *Cf. Tex. Dep't of Public Safety v. Cordes*, 85 S.W.3d 342, 347–48 (Tex. App.—Austin 2002, no pet.) (official immunity not established when officer stated in affidavit that stopped car did not obstruct his view of intersection but stated in deposition that stopped car did obstruct his view).

good faith is not rebutted merely by evidence that he violated the law or department policy in making his response. *Johnson v. Campbell*, 142 S.W.3d 592, 596 (Tex. App.—Texarkana 2004, pet. denied); *Williams v. Hous. Firemen's Relief & Ret. Fund*, 121 S.W.3d 415, 436 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see Royal*, 2010 WL 610604, at *9. Rather, the test of good faith is one of objective legal reasonableness—that is, whether a reasonable officer could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the officer at the time the conduct occurred. *City of Lancaster*, 883 S.W.2d at 656; *Williams*, 121 S.W.3d at 436.

Section 2.01 of the policy at issue provided:

B.    Officers shall balance the need for pursuit and apprehension against the probability and severity of damage or injury. The Officer shall consider the seriousness of the offense which the evader or reckless evader committed.

C.    Officers shall not engage in pursuit when it reasonably appears that the potential harm to person or property arising from such pursuit outweighs the potential harm threatened by the escaping offender. In the absence of an outweighing danger to persons or property, a peace officer shall not engage in pursuit whenever it reasonably appears that apprehension of the escaping offender by other means is likely.

The language of the policy suggests that compliance requires a balancing of interests similar to that required by *Wadewitz* to establish whether an officer acted in good faith. The evidence in this case shows that Corrales conducted the necessary balancing and acted reasonably when deciding to initiate and continue the pursuit. Therefore, Dr. Kirkham's assertion that Corrales violated the policy is not sufficient to show that no reasonable officer could have believed that he complied with the policy.

Dr. Kirkham next implied that Corrales did not need to pursue Krustchinsky

because the basis for the initial stop was a minor traffic infraction. This conclusion does not alone establish that no reasonable officer could have decided to pursue Krustchinsky under the particular circumstances confronting Corrales—namely, that Krustchinsky pretended to pull over; may have committed a felony when he fled from Corrales, *see* Tex. Penal Code Ann. § 38.04 (West Supp. 2014)[6]; violated numerous traffic regulations; and put the public at risk in his attempt to avoid apprehension. *See Johnson*, 142 S.W.3d at 596 (good faith judged on the basis of what the officer perceived at the time); *see also Clark*, 38 S.W.3d at 583 (balancing of need-risk factors does not prevent officers from pursuing suspects for traffic violations).

With regard to other factors pertinent to Corrales's good faith, Dr. Kirkham tended to agree with Corrales's assessment of the situation, which supports a conclusion that Corrales acted in good faith. For instance, Dr. Kirkham acknowledged in his deposition that no pedestrians were present during the pursuit. He conceded that the traffic was lighter once the pursuit passed the intersection of Garth Road and I-10. He further conceded that the road was dry and the weather was clear. And, he acknowledged that Corrales was unable to identify Krustchinsky.[7]

Dr. Kirkham recognized in his report that Corrales did consider the use of spike strips as an alternative to continuing the pursuit, but he claimed that Officer

---

[6] The record does not indicate whether Krustchinsky was charged or convicted of any crimes.

[7] The Jacksons contend that the video evidence "demonstrates the truck's make and model was likely able to be determined." To the extent this argument attempts to raise a fact issue as to whether Corrales was able to identify Krustchinsky during the pursuit, Dr. Kirkham's own testimony negates the Jacksons' position. Dr. Kirkham agreed that Officer Corrales was never able to identify the vehicle. *Cf. Loftin*, 187 S.W.3d at 541–42 (officers could have identified driver when they had the name of the registered owner and knew that car was not reported stolen).

Corrales could have ended the pursuit safely if he had waited for the spike strips to be deployed. Testimony that a reasonably prudent officer could have decided to stop the pursuit, however, is not sufficient to controvert an officer's good faith. *See Chambers*, 883 S.W.2d at 657. Furthermore, the evidence indicates only that spike strips were requested, not that they had been deployed.

Indulging every reasonable inference in favor of the Jacksons, we conclude that the Jacksons' evidence is insufficient to controvert Baytown's proof on good faith. *See Clark*, 38 S.W.3d at 587. We overrule the Jacksons' second issue.

## IV.    Conclusion

Baytown conclusively established that Corrales acted in good faith. The Jacksons did not controvert Baytown's evidence of good faith. Because Corrales is protected from personal liability based on official immunity, Baytown is protected from liability under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *Clark*, 38 S.W.3d at 580. Therefore, summary judgment in favor of Baytown was proper. *See Harris Cnty. v. Ochoa*, 881 S.W.2d 884, 890 (Tex. 1994). We affirm the trial court's judgment.[8]


/s/     Marc W. Brown
        Justice


Panel consists of Justices Jamison, Busby, and Brown.

---

[8] We need not address the city's argument regarding whether the Jacksons' injuries arose from Corrales's operation or use of a motor-driven vehicle. *See* Tex. R. App. P. 47.1.