**Reversed and Dismissed and Majority and Dissenting Opinions filed January 11, 2024**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00061-CV

---

### CITY OF HOUSTON, Appellant

### V.

### SAMUEL SALAZAR, INDIVIDUALLY AND AS NEXT FRIEND OF SAMMY SALAZAR; JUSTIN PACHECO, ROZA SALAZAR, AND DAISY SALAZAR, Appellees

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2022-15403**

---

### MAJORITY OPINION

Appellees Samuel Salazar, individually and as next friend of Sammy Salazar; Justin Pacheco, Roza Salazar, and Daisy Salazar were riding in a vehicle that was hit by the patrol vehicle driven by Officer Cody Seidel of the Houston Police Department. Officer Seidel was pursuing a fleeing suspect at the time of the collision. Appellees filed suit against the City of Houston, alleging negligence.

Houston eventually moved for summary judgment arguing that appellees' lawsuit should be dismissed because it had not waived governmental immunity. The trial court denied Houston's motion and Houston filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). Because we conclude Houston conclusively established that Officer Seidel acted in good faith, we reverse the trial court's order and render judgment dismissing appellees' lawsuit for lack of subject matter jurisdiction.

## BACKGROUND

Officer Cody Seidel is a patrol officer with the Houston Police Department. On December 24, 2021, Officer Seidel responded to an emergency call at an area hotel. As other officers attended to that call, hotel staff notified some of the responding officers to the original emergency that they believed an assault was taking place in one of the hotel's rooms. Officers called out over the radio that they needed assistance in that hotel room. As Officer Seidel ran to the room, he observed a bleeding female and two police officers attempting to handcuff a man, who was resisting the officers. Officer Seidel first assisted the other officers in handcuffing the man, who identified the female as Tammy Wilson. Officer Seidel then tried to find Wilson to take her statement regarding the assault. At this point, Officer Seidel realized that Wilson may have fled the scene.

Officer Seidel got into his patrol vehicle and drove through the hotel parking lot looking for Wilson. Officer Seidel eventually saw Wilson in a black sedan with Louisiana license plates. Officer Seidel parked behind Wilson and started to get out of his patrol vehicle to speak with her. At that point, Wilson drove forward and struck a parked car. Officer Seidel yelled for Wilson to stop, but she proceeded on and moved toward the exit from the hotel parking lot.

At this point, rather than being a complainant whose statement was

2

necessary to ensure a conviction for the assault, Wilson had become a suspect in a hit-and-run and felony evasion of a peace officer with a motor vehicle. Officer Siedel believed that he needed to pursue Wilson "to address this crime that [he had] witnessed." Officer Seidel activated his siren and emergency lights and pursued Wilson northbound on the West Sam Houston Parkway feeder road. Wilson continued to evade Officer Seidel, traveling at a high rate of speed, running red lights, and swerving around vehicles on the feeder road.

As Wilson approached the intersection of the West Sam Houston Parkway and West Little York Road, she swerved into the far left lane so she could get around the vehicles that were stopped for the red light, and then proceeded to turn right from the far-left lane, disregarding the red light. Officer Seidel approached the same intersection with his lights and siren activated, reduced his speed down to around 30 miles per hour from 60-70 miles per hour. Officer Seidel checked for cross-traffic and he believed the intersection to be clear for him to complete the right turn and follow Wilson. Mid-way through completing that turn, Officer Seidel's patrol vehicle collided with Salazar's vehicle.

Appellees filed suit against Houston and Officer Seidel individually, asserting negligence claims. The trial court eventually granted Officer Seidel's Rule 91a Motion to Dismiss the claims against him. *See* Tex. R. Civ. P. 91a (providing mechanism to dismiss lawsuits with no basis in law or fact). Houston then filed a traditional motion for summary judgment arguing that the trial court should dismiss appellees' claims based on Houston's governmental immunity. Among other arguments, Houston asserted that the motor-vehicle waiver found in the Texas Tort Claims Act did not apply because Officer Seidel would be shielded from liability under the common law because of his official immunity.

The trial court reset the hearing on Houston's motion so that appellees could

depose Officer Seidel. Appellees then filed a response to Houston's motion and they attached the entirety of Officer Seidel's deposition to the response. Appellees attached no other evidence to their summary judgment response. During the deposition, appellees' attorney questioned Officer Seidel about the video footage taken by Officer Seidel's body camera. Appellees also discuss the video footage in their summary judgment response. Houston objected to the video footage as summary judgment evidence and the trial court sustained Houston's objection and struck the footage from the summary judgment record.[1] The trial court then denied Houston's motion. This interlocutory appeal followed.

## ANALYSIS

Houston raises three issues in this appeal, but because we conclude that Officer Seidel was entitled to official immunity and therefore Houston's governmental immunity was not waived, we need only reach Houston's second issue.

## I.     Standard of Review and Applicable Law

Governmental units are immune from suit unless immunity is waived by state law. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). If a governmental unit has immunity from suit, a trial court lacks subject matter jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). A challenge to a trial court's subject matter jurisdiction may be asserted by a plea to the jurisdiction or in a motion for summary judgment. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 228.

A defendant's plea may challenge either the plaintiffs' pleadings or the

---

[1] Appellees have not challenged this ruling on appeal.

4

existence of jurisdictional facts. *Id.* When, as here, the governmental unit challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *See City of Houston v. Ranjel*, 407 S.W.3d 880, 887 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Miranda*, 133 S.W.3d at 228). If that evidence raises a fact issue as to jurisdiction, the governmental entity's plea must be denied because the issue must be resolved by the trier of fact. *Miranda*, 133 S.W.3d at 227–28. If the relevant evidence is undisputed or fails to present a jurisdictional fact issue, however, the governmental unit's plea must be granted. *Maspero*, 640 S.W.3d at 529. The standard of review for a plea to the jurisdiction based on evidence generally mirrors that of a motion for summary judgment. *Quested v. City of Houston*, 440 S.W.3d 275, 280 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We therefore must credit evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Id.*

Houston, as a municipality and political subdivision of the State, cannot be vicariously liable for an employee's acts unless its governmental immunity has been waived. *City of Pasadena v. Belle*, 297 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Under the facts of this case, possible waiver of the City's immunity from suit and liability is found in section 101.021 of the Texas Tort Claims Act (the Act), which provides in relevant part:

> A governmental unit in the state is liable for … property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B) the employee would be personally liable to the claimant according to Texas law[.]

5

Tex. Civ. Prac. & Rem. Code § 101.021(1).

## II. Houston conclusively established that it did not waive its governmental immunity.

The parties agree that appellees' claims arise from the use of a motor vehicle. They also agree that Officer Seidel was acting within the scope of his employment when he pursued Wilson's vehicle. The parties' dispute concerns whether Officer Seidel could "be personally liable to the claimant[s] under Texas law." Houston contends the evidence conclusively shows that Officer Seidel retained his official immunity because he responded to the disturbance call in good faith. Houston then argues that Officer Seidel could not be personally liable to appellees according to Texas law and, as a result, Houston retained its governmental immunity. *See City of San Antonio v. Riojas*, 640 S.W.3d 534, 537 (Tex. 2022) (stating that if an "employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its sovereign immunity").

Official immunity is an affirmative defense, and therefore the burden rests on Houston to establish all elements of that defense. *Belle*, 297 S.W.3d at 530; *see Green v. Alford*, 274 S.W.3d 5, 16 n.11 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (en banc). Under that defense, a government employee may be immune from a lawsuit that arises from (1) the performance of discretionary duties (2) in good faith, (3) provided he was acting in the course and scope of his authority. *Id.* Here, only Officer Seidel's good faith is in dispute.

In this context, "good faith" is defined as a standard of objective legal reasonableness that disregards the police officer's subjective state of mind. *Belle*, 297 S.W.3d at 530 (citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997)). The defendant has the burden to prove conclusively that a reasonably

prudent police officer, under the same or similar circumstances, could have believed his actions were justified based on the information he possessed at the time. *Id.*; *City of Lancaster*, 883 S.W.2d at 656–57. That burden is not onerous because official immunity protects all but the plainly incompetent or those who knowingly violate the law. *Riojas*, 640 S.W.3d at 539–40. To rebut a defendant's showing of good faith, a plaintiff must establish that no reasonable person in the officer's position could have thought the facts were such that they justified the officer's actions. *Belle*, 297 S.W.3d at 530.

The good-faith standard of reasonableness weighs the *need* for the officer's actions against the *risks* entailed by such conduct based on the officer's perception of the facts at the time of the event. *Wadewitz*, 951 S.W.2d at 467. The need aspect of the balancing test refers to the urgency of the circumstances requiring police intervention and requires an evaluation of the following factors: (1) the seriousness of the crime or accident to which the officer is responding; (2) whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect; and (3) what alternative courses of action, if any, are available to achieve a comparable result. *Id.* The risk aspect refers to the countervailing public safety concerns and requires an evaluation of the following factors: (1) the nature and severity of the harm the officer's actions could cause (including injuries to bystanders as well as the possibility that the officer may not reach the scene of the original emergency); (2) the likelihood that any harm would occur; and (3) whether the risk of harm would be clear to a reasonably prudent officer. *Id.*

To prevail, a governmental defendant's proof must sufficiently address these need and risk factors. *Telthorster v. Tennell*, 92 S.W.3d 457, 462 (Tex. 2002); *Harris County v. Mireles*, No. 14-22-00367-CV, 2023 WL 3743585, at *5 (Tex.

7

App.—Houston [14th Dist.] June 1, 2023, no pet. h.). An expert giving testimony regarding good faith must discuss what a reasonable officer could have believed based on the officer's perception of the facts at the time of the event, and this discussion must be substantiated with reference to both the need and risk aspects of the balancing test. *Belle*, 297 S.W.3d at 531 (citing *Wadewitz*, 951 S.W.2d at 466–67). Magic words are not needed to establish that a law-enforcement officer considered the need/risk balancing factors. *Bonilla*, 481 S.W.3d at 645. In addition, the facts of the case may require evidence that the officer made a continuing assessment of the need and risk factors because emergency responses and police pursuits may involve rapidly changing circumstances. *Belle*, 297 S.W.3d at 531 (citing *University of Houston v. Clark*, 38 S.W.3d 578, 582–83 (Tex. 2000)). Whether a police officer considered the need/risk factors may be implicit in the evidence. *See Bonilla*, 481 S.W.3d at 645 ("The fact that the trooper did not expressly identify 'alternatives' that may have been considered does not render the evidence deficient."). A police officer's own affidavit may establish good faith. *City of Houston v. Sauls*, 654 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2022, pet. filed). A reviewing court analyzing these factors first must determine whether the governmental unit met its initial burden to prove conclusively the police officer's good faith. Only when it has been determined that the governmental unit met this burden does the court address whether the nonmovant's evidence raises a genuine issue of material fact on the issue of good faith. *Id.*

We turn first to the question whether Houston met its initial burden to conclusively prove that Officer Seidel was acting in good faith prior to the collision. With respect to need, Officer Seidel recognized that the fleeing female was initially not a suspect but a complainant for an incident of domestic assault, an

8

extremely serious issue, "particularly since the COVID-19 pandemic started." Officer Seidel had also observed that the assault had left her bloodied. According to Officer Seidel, the charge for such an offense could range from a misdemeanor up to a felony. Officer Seidel believed that it was vital to obtain a statement from her to ensure the case could be prosecuted. Once the female attempted to flee the scene, hit a parked car, and led Officer Seidel on a high-speed chase, Officer Seidel believed that there was a tremendous need to get her off the road, before she hurt someone. *See Maspero*, 640 S.W.3d at 531–32 ("[W]e have long recognized that fleeing suspects may pose an even greater danger to the community"). With respect to alternatives to pursuit, Officer Seidel chose not to discontinue the pursuit because the vehicle had Louisiana license plates and the driver was staying at a hotel. It was Officer Seidel's belief that if he discontinued the pursuit, the police would likely be unable to arrest her for the hit-and-run accident, felony evasion, reckless driving, or arrest the man detained in the hotel room for assault. Indeed, after the incident, Officer Seidel was unable to locate the fleeing female using the name "Tammy Wilson," the name and contact information provided by the male assault suspect. *See Martinez*, 526 S.W.3d at 567 ("Johnson did not know the identity of the driver or passenger during the pursuit, nor did he know whether either had been identified based on the plate number or other information that he provided to dispatch. Given the limited state of his knowledge, Johnson could not evaluate the likelihood that the fleeing driver could have been apprehended later had the pursuit been discontinued.").

With respect to risk, Officer Seidel considered road, weather, and traffic conditions. He described that the weather was clear, roads were dry, it was sunny and bright outside, and traffic was light because it was Christmas Eve. Officer Seidel also noted that the area where the chase occurred is primarily commercial.

9

Officer Seidel traveled approximately 60 to 70 miles per hour in the 45 miles per hour zone on the access road, and he believed this speed to be safe and appropriate based upon his training in driving in police pursuits, the fact that the multi-lane access road was wide and straight with excellent visibility, as well as the fact that he had his patrol vehicle's emergency lights and siren activated. Then, based on all of these facts, Officer Seidel opined that a reasonably prudent law enforcement officer under the same or similar circumstances could have believed that Officer Seidel's actions were justified based on his perception of the facts at the time because the need to immediately apprehend the female was greater than the minimal risk of harm to others from Officer Seidel's own driving. We hold Houston conclusively established that Officer Seidel was acting in good faith when the collision occurred, and the burden passed to appellees to produce sufficient summary judgment evidence to create a fact issue as to Officer Seidel's good faith.

We turn next to whether appellees produced summary judgment evidence sufficient to raise a fact issue on whether Officer Seidel acted in good faith. The only evidence appellees attached to their summary judgment response was Officer Seidel's complete deposition transcript. We have reviewed the complete deposition and conclude that it reinforced Officer Seidel's affidavit testimony that he considered the need/risk factors during the pursuit. For example, Officer Seidel described a technique he learned at the Houston Police Academy called "slow, show, and go." According to Officer Seidel, this technique requires the police officer to initially slow down as he approaches an intersection, show his presence through his patrol vehicle's emergency lights and siren, and visibility, then proceed through the intersection once it is clear. During his deposition, Officer Seidel testified that he followed this technique prior to entering the intersection where the collision occurred.

Appellees offered no evidence creating a genuine issue of material fact on the issue of Officer Seidel's good faith. Instead, appellees argued that Officer Seidel's conduct during the pursuit was reckless or that he failed to exercise due caution. Appellees offered no evidence to substantiate this argument. Even if they did, it would be insufficient to create a genuine issue of material fact on Officer Seidel's good faith because neither recklessness nor failure to exercise due caution defeats good faith. *Martinez*, 526 S.W.3d at 563–64; *Mem'l Vills. Police Dep't v. Gustafson*, No. 01-10-00973-CV, 2011 WL 3612309, at *6 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.) (mem. op.); *City of Fort Worth v. Robinson*, 300 S.W.3d 892, 900 (Tex. App.—Fort Worth 2009, no pet.) ("Nor does recklessness in the performance of the officer's duty belie his good faith."); *Johnson v. Campbell*, 142 S.W.3d 592, 596 (Tex. App.—Texarkana 2004, pet. denied) (same).

Here, it is undisputed that Officer Seidel was using his emergency lights and siren as he approached the feeder road intersection. It is also undisputed that Officer Seidel considered the need/risk balancing factors throughout his pursuit of the fleeing female. Further, the mere fact that an accident occurred during the pursuit is not evidence that Officer Seidel did not act in good faith. *Mireles*, 2023 WL 3743585, at *8. We therefore conclude that Houston conclusively established that Officer Seidel acted in good faith when he initiated and continued his pursuit of the female identified as Tammy Wilson and that it retained its governmental immunity as a result. *See Riojas*, 640 S.W.3d at 537. We sustain Houston's second issue on appeal. Because we have determined that Houston conclusively established that Officer Seidel was entitled to official immunity and that, as a result, its own governmental immunity was not waived, we need not address Houston's other issues raised in this appeal.

## CONCLUSION

Having sustained Houston's second issue on appeal, we reverse the trial court's order denying Houston's summary judgment and render judgment dismissing appellees' claims against Houston for lack of subject matter jurisdiction.

/s/    Jerry Zimmerer
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Poissant (Poissant, J., dissenting).