**Reversed and Rendered in Part, Affirmed in Part, and Memorandum Opinion filed March 7, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00087-CV

---

### CITY OF HOUSTON, TEXAS, Appellant

### V.

### CHELSEA MANNING, INDIVIDUALLY AND AS NEXT FRIEND OF T.N., AALIYAH MITCHELL, AND CIERRA WILLIAMS, Appellees

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-30594**

---

## M E M O R A N D U M   O P I N I O N

This is the second appeal by the City of Houston in this personal injury suit arising from a collision between a fire truck and appellees' vehicle. In the first appeal, the City challenged an order denying its traditional summary-judgment motion on immunity grounds. We held that a genuine and material fact question

existed as to the good-faith element of the City's employee's official immunity, and we affirmed in part the trial court's denial of the City's motion.[1]

After the first appeal, the City moved for summary judgment again on immunity grounds, relying on its earlier evidence but adding some new evidence and arguments. The trial court denied the City's second motion. In this appeal, we again conclude that the City has not established conclusively that it is immune as a matter of law. However, we agree with the City that two of the plaintiffs lack standing to assert certain claims. We reverse the trial court's order in part and render judgment that two of the plaintiffs take nothing on their claims for past medical expenses. In all other respects, we affirm the trial court's order.

## Background

The facts are familiar to the parties and to this court. A Houston Fire Department ("HFD") truck driven by Engineer/Operator Wilhelm Schmidt responded to a dispatch for a dumpster fire at an apartment complex. En route, the fire truck collided with a car driven by Chelsea Manning at the intersection of Ludington Drive and Fondren Road. Also in Manning's car were three minor passengers, two of whom, Cierra Williams and Aaliyah Mitchell, reached the age of majority during the pendency of this suit; the third minor we refer to as T.N.

Appellees' remaining claims are for negligence and negligence per se. Appellees alleged that they had the green light and that the City was vicariously liable for Schmidt's negligence, specifically his failure to properly proceed with "duty and care" through the intersection and failure to slow the fire engine as necessary for safe operation before proceeding through a red light. Appellees also

---

[1] *City of Houston v. Manning*, No. 14-20-00051-CV, 2021 WL 1257295 (Tex. App.—Houston [14th Dist.] Apr. 6, 2021, pet. denied) (mem. op.) ("*Manning I*"). We affirmed the denial as to appellees' negligence and negligence per se claims, but we reversed and rendered judgment on appellees' claims of negligent training, retention, and supervision. *Id.* at \*8.

alleged that the City was vicariously liable for Schmidt's violations of the Transportation Code.

In the first appeal, we affirmed the denial of summary judgment on these claims. We said the City had not conclusively established the official immunity defense because the City assumed the truth of material, disputed facts—namely, whether Schmidt slowed the fire truck as necessary for safe operation when proceeding through a red traffic signal. *See Manning I*, 2021 WL 1257295, at *6-7. We noted summary-judgment evidence indicating that (1) Schmidt was driving 45 miles-per-hour when the collision occurred, which was 10 miles-per-hour over the speed limit, and (2) the investigating officers commented at the scene that Schmidt should have slowed down. There was also evidence that Manning had the green light and that Schmidt did not know whether his traffic light was red. Because no witness testified that the standard for good faith was established assuming that Schmidt did not slow his vehicle before proceeding through the intersection against a red signal, we held the City had not proven entitlement to summary judgment. *Id.* at *7. The City appealed our decision to the supreme court, which denied review.

Subsequently, the City moved for summary judgment a second time, arguing that: (1) Schmidt retained his official immunity and thus the City's governmental immunity was not waived; (2) the Tort Claims Act's "emergency exception" and "9-1-1 exception" applied to preserve the City's governmental immunity; (3) the Tort Claims Act does not waive governmental immunity for negligence per se; and (4) Mitchell and Williams lacked standing to pursue claims for medical expenses incurred before they reached majority age. Appellees responded, again contending that genuine issues of material fact precluded summary judgment. Appellees also sought leave to join Mitchell's and Williams's parents, Latishely Dewalt and

3

Sherita Massie, as plaintiffs. The trial court denied the City's motion for summary judgment and allowed Dewalt and Massie to join the suit. The City appeals.

**Standard of Review**

Subject-matter jurisdiction is necessary to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plaintiff must allege facts affirmatively showing the trial court has subject-matter jurisdiction, *id.* at 446, and a party may challenge the lack of subject-matter jurisdiction by filing a plea to the jurisdiction or by other means, including, as here, by motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see also Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 21 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Because subject-matter jurisdiction is a question of law, we review the court's ruling de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *City of Brazoria v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *3 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.).

To obtain a traditional summary judgment based on lack of jurisdiction, a movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 551 (Tex. 2019) (citing Tex. R. Civ. P. 166a(c)). The nonmovant may raise a genuine issue of material fact by producing "'more than a scintilla of evidence establishing the existence of the challenged element.'" *Id.* (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). Though the City asserted immunity by way of a traditional summary-judgment motion, the applicable standards generally mirror those governing review of an order denying a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 228; *Ellis*, 2015 WL 3424732, at *3. A defendant's jurisdictional plea may challenge

either the plaintiffs' pleadings or the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 228. The City challenged the existence of jurisdictional facts, so we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* at 227. In both traditional summary judgment and plea to the jurisdiction contexts, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor. *See id.* at 228. If the relevant evidence is undisputed or a fact question is not raised relative to the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea, and the fact issue will be resolved by the fact finder. *Id.* at 227-28.

## Analysis

### A. Official immunity

#### 1. *Applicable law*

We first address the City's argument that it retains governmental immunity because Schmidt has official immunity.

The City, as a municipality and political subdivision of the State, cannot be vicariously liable for an employee's acts unless its governmental immunity has been waived. *Gomez v. City of Houston*, 587 S.W.3d 891, 896 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (en banc); *City of Pasadena v. Belle*, 297 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The Texas Tort Claims Act ("TTCA") waives immunity of governmental units like the City when the negligence of an employee acting within the scope of employment proximately causes personal injury arising from operation or use of a motor-driven vehicle, and

5

if the employee would be personally liable to the claimant according to Texas law. Tex. Civ. Prac. & Rem. Code § 101.021(1). The issue in dispute is whether Schmidt would be personally liable to the claimants under Texas law.

The City contends that Schmidt is protected by official immunity. Under the official immunity defense, a government employee like Schmidt may be immune from a lawsuit that arises from the performance of the employee's discretionary duties in good faith, provided the employee was acting within the scope of the employee's authority. *Belle*, 297 S.W.3d at 530. Because official immunity is an affirmative defense, the burden rests on the City to establish all elements of the defense. *See Gomez*, 587 S.W.3d at 897. As in the prior appeal, the parties dispute only the good-faith element.

A court measures good faith against a standard of objective legal reasonableness, without regard to the employee's subjective state of mind. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). To be entitled to summary judgment, the City had to prove conclusively that a reasonably prudent firefighter, under the same or similar circumstances, could have believed his actions were justified based on the information he possessed at the time. *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656-57 (Tex. 1994). The good-faith standard is analogous to an abuse-of-discretion standard that protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 643 (Tex. 2015) (per curiam) (quoting *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007) (per curiam)).

Good faith depends on how a reasonably prudent firefighter could have assessed both the need to which the firefighter was responding and the risks of the firefighter's course of action, based on the firefighter's perception of the facts at

6

the time of the event. *Wadewitz*, 951 S.W.2d at 467. To prevail, a governmental defendant's proof must sufficiently address the *Wadewitz* need/risk factors, which are well-known and need not be repeated here. *Telthorster*, 92 S.W.3d at 462.

A reviewing court analyzing these factors first must determine whether the governmental unit met its initial burden to prove conclusively the firefighter's good faith. *Gomez*, 587 S.W.3d at 898. Only when it has been determined that the governmental unit met this burden does the court address whether the nonmovant's evidence raises a genuine issue of material fact on the issue of good faith. *Id.*

2.    *Application*

The City contends the evidence establishes conclusively that Schmidt retained his official immunity because he responded to the fire call in good faith based on the facts he perceived at the time of the accident. Appellees counter that genuine and material fact questions remain on the good-faith element, even considering the City's additional evidence.

In support of its motion, the City relied on affidavits from Schmidt, HFD District Chief Deena Elliott, and HFD Captain James Hill. Schmidt's and Elliott's affidavits were unchanged from the first motion. The City presented Hill's affidavit for the first time with its second summary-judgment motion.

Schmidt attested among other things that: the call to which he responded was dispatched as an emergency call; he activated the fire truck's overhead lights and siren; as he approached the intersection of Fondren and Ludington, he "slowed down to clear the intersection"; he saw no cars on either side of the fire truck and the cars across the intersection heading north on Fondren slowed or stopped to yield to the fire truck; and as he entered the intersection, Manning's vehicle crossed in front of the fire truck, he attempted to brake, but he could not avoid the

7

impact. In Schmidt's opinion, his actions were reasonable and proper under the circumstances; he considered both the risk of harm to others from the fire itself as well as the risk of harm to others from his driving; and he believed that another firefighter under the same or similar circumstances could have believed that Schmidt's actions were justified based on his perception of the facts at the time and that the need to immediately reach the scene outweighed any minimal risk of harm to others from his driving.

Chief Elliott's affidavit is generally similar in substance to Schmidt's. Elliott, who investigated the incident for HFD, expounded on the nature of the emergency, explaining that the dumpster was near an apartment complex, the call was received at night when residents likely were sleeping, there was a significant risk that residents would not be alerted to the danger of the dumpster fire, Schmidt followed department policy by activating the truck's emergency lights and siren, Schmidt slowed significantly as he neared the intersection, and he attempted to avoid the collision. In Elliott's opinion, another reasonably prudent engineer/operator, including herself, under the same or similar circumstances, "could have believed that the need to quickly reach the incident scene outweighed any minimal risk of harm to others and that all Engineer/Operator Schmidt's decisions and action before the incident were justified and reasonable based on his perception of the facts at the time."

Captain Hill was another firefighter in the fire engine on the night of the crash. Hill attested that: a fire at an apartment complex "could quickly turn into a mass casualty situation"; Schmidt activated the truck's lights and sirens; the firefighters traveled "as fast as [they] could towards the location of the call"; Schmidt slowed to clear the intersection of Fondren and Ludington; and Hill sounded the truck's air horn as the engine approached the intersection. In Hill's

opinion, Schmidt's decisions and actions before the incident were justified and reasonable based on his perception of the facts at the time.

Hill introduced a new fact that was not presented in the prior appeal. He explained that the fire truck was fitted with an "Opticom transmitter," that automatically activated when the emergency lights were turned on. An Opticom transmitter "grants the apparatus a temporary right of way by turning their traffic light green, and the others red." Hill could tell that the Opticom transmitter was working because as they drove to the scene traffic lights in their path were turning green. The City relied on Hill's affidavit to address one key holding in our decision in the prior appeal: that a material fact question existed whether Schmidt slowed the fire truck before entering the intersection against a red light. Based on the Opticom transmitter's operation, Hill opined that, even if Schmidt did not slow down as he approached the intersection, he still acted in good faith because "the Opticom transmitter was operating and turned our light green as we approached, so we did not have to slow down for a red traffic signal." Hill added that the fire truck's emergency lights were activated the whole time and they blew the airhorn as they approached each intersection, including the one at Fondren and Ludington.

Neither Schmidt's nor Elliott's affidavits state whether the fire truck's traffic light was red. However, both Manning and Mitchell testified in depositions that their traffic light was green when they drove into the intersection. According to Manning, they waited at a red light for about one minute, then their light turned green. The City attached relevant excerpts from Manning's and Mitchell's depositions to its second summary-judgment motion.

Whether the fire truck proceeded into the intersection against a red light is a material fact. If the light was red, Schmidt was permitted to proceed only under

9

certain circumstances under the Transportation Code, including after slowing as necessary for safe operation. *See* Tex. Transp. Code § 545.151(a)(2); 546.001(2).

An opinion that a governmental employee acted in good faith does not conclusively establish good faith when the opinion is reached by assuming the truth of disputed facts. *See Manning I*, 2021 WL 1257295, at *6-7; *Gomez*, 587 S.W.3d at 898. Although the City presented new evidence that Schmidt acted reasonably in not slowing the fire truck because the traffic signal was green, this assertion assumes that Schmidt had the green light. The City's other evidence, however, contradicts this assertion, including Manning's testimony that she had the green light. The City posits that this evidence is immaterial, arguing, "That Manning testified she entered the intersection on a green light does not necessarily mean that Engine 82 had a red, because the Opticom transmitter cycled the lights as Engine 82 approached and Captain Hill confirmed that Engine 82's light was green at the intersection of Fondren and Ludington." We do not agree. There is no evidence that the traffic signals for Schmidt and Manning could have been green at the same time. Captain Hill testified that when the Opticom transmitter activates a green signal for an approaching fire truck, the signals for other traffic are changed to red. The City's good-faith evidence again assumes the truth of a disputed material fact. Thus, it did not meet its initial burden to prove conclusively the firefighter's good faith. *Manning I*, 2021 WL 1257295, at *6-7; *Gomez*, 587 S.W.3d at 898-99 (holding that city failed to establish good faith where affidavits discussed good faith under assumed facts and provided no evidence of good faith under version of facts most favorable to nonmovant); *Tex. Dep't of Pub. Safety v. Rodriguez*, 344 S.W.3d 483, 497 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (concluding officer and lieutenant's affidavits did not establish good faith in

10

driving through red light). We need not examine appellees' responsive evidence or the City's objections to that evidence for purposes of this issue.

We hold that the trial court did not err in denying the City's motion for summary judgment on the basis of derivative official immunity. We overrule the City's first issue.

## B.    Emergency exception

The TTCA includes a subchapter entitled "Exceptions and Exclusions" that lists circumstances under which a waiver of immunity does not apply. One of the exceptions addresses emergencies. Under this exception, the Act "does not apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others. . . ." Tex. Civ. Prac. & Rem. Code § 101.055(2). The plaintiff has the burden of presenting some evidence that the emergency exception does not apply. *See Ellis*, 2015 WL 3424732, at *7. In its second issue, the City argues that the emergency exception applies because it established as a matter of law that Schmidt complied with applicable Transportation Code provisions, namely he slowed entering the intersection, did not speed, and did not act recklessly. *See* Tex. Transp. Code §§ 546.001(2), (3); 546.005. We disagree.

### 1.    *Discussion*

Under section 546.001, the driver of an emergency vehicle may proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation, and may exceed a maximum speed limit, except as provided by an ordinance adopted

11

under Section 545.365, as long as the operator does not endanger life or property. *See id.* § 546.001(2), (3).

Additionally, under section 546.005 of the Texas Transportation Code, a driver of an emergency vehicle is not relieved of "the consequences of reckless disregard for the safety of others." Tex. Transp. Code § 546.005; *see also Ellis*, 2015 WL 3424732, at *7. The emergency exception does not apply if the operator of the emergency vehicle acted recklessly by an act or omission the operator knew or should have known posed a high degree of risk of serious injury. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998); *Green*, 274 S.W.3d at 22-23; *Ellis*, 2015 WL 3424732, at *7. Thus, if the summary-judgment evidence raises a fact issue as to whether Schmidt acted recklessly, then the trial court did not err in denying the City's motion for summary judgment based on the emergency exception. *See Ellis*, 2015 WL 3424732, at *7-8.

Viewed in the light most favorable to appellees, the accident report and the City's three witnesses constitute some evidence that Schmidt drove above the speed limit and proceeded into the intersection against a red light without slowing down. Appellees also included the deposition of Officer Jarrett Glenn in their summary-judgment response. Officer Glenn investigated the crash for the Houston Police Department. During his deposition, he was asked, "Based on your investigation and your opinion and investigation into this crash, you found that the operator of the fire engine has a reckless disregard for the safety of others; is that right?" Glenn responded, "According to [the TTCA's] definition, that is correct. It's documented in the crash report."

Thus, fact questions exist whether the City complied with all three applicable laws it cited. A factfinder could reasonably conclude that Schmidt (1) drove above the speed limit, (2) did not slow his speed while entering the

intersection, and (3) proceeded against a red light.  Thus, disputed and material fact issues preclude summary judgment in the City's favor on the emergency response exception.  *See Rivera v. City of Houston*, No. 01-19-00629-CV, 2022 WL 2163025, at *7 (Tex. App.—Houston [1st Dist.] June 16, 2022, no pet.) (mem. op.) (city did not establish right to summary judgment on emergency exception when officer entered the intersection having failed to determine whether she had a red light); *see also Gomez*, 587 S.W.3d at 903 (fact issue as to emergency exception when officer did not slow his speed below the posted speed limit to compensate for the wet conditions, did not use his patrol car's emergency lights and siren, and did not maintain visual contact with the road as he approached the intersection); *City of Missouri City v. Passante*, No. 14-09-00634-CV, 2010 WL 2998777 *8 (Tex. App.—Houston [14th Dist.] Aug. 3, 2010, no pet.) (affirming trial court's denial of plea to jurisdiction because there were fact issues on whether police officer was reckless when there were also fact issues on whether officer (1) was using his emergency lights and siren, (2) had the green light at the intersection where he collided with another vehicle, and (3) could not see cross-traffic at the intersection); *Belle*, 297 S.W.3d at 535 (affirming trial court's denial of plea to jurisdiction because there was fact issue on whether police officer was reckless when he responded to emergency call by traveling twice the speed limit without operating emergency lights or siren).

2.    *The City's evidentiary objections*

The City objected to the accident report, including Schmidt's statement that he was traveling at 45 miles per hour, and Officer Glenn's deposition testimony. The trial court did not rule on the City's objections, which the City says is error. The City filed a timely written objection to the court's failure to rule, so error is preserved.  *See* Tex. R. App. P. 33.1(a)(2)(B).

13

The City contends that the accident report generally was inadmissible because appellees failed to demonstrate that the investigating officers were trained in accident reconstruction. It is generally true that a law enforcement officer is not qualified to render an expert opinion regarding an accident simply by virtue of his position. *See Pyle v. S. Pac. Transp. Co.*, 774 S.W.2d 693, 695 (Tex. App.— Houston [1st Dist.] 1989, writ denied). But the accident report, at least the portions of it that we have highlighted, does not constitute the investigating officer's expert opinion as to causation; it instead collects the facts as related to the officer from witnesses, such as whether the signal light was red or green. *See, e.g.*, *Griffin v. Carson*, No. 01-08-00340-CV, 2009 WL 1493467, at *4 (Tex. App.— Houston [1st Dist.] May 28, 2009, pet. denied) (mem. op.) (accident reports are generally admissible, but opinion testimony regarding causation may be deemed inadmissible); *McRae v. Echols*, 8 S.W.3d 797, 800 (Tex. App.—Waco 2000, pet. denied) (investigator's opinion based on factual observation may be deemed admissible).

The City objected to the inclusion of Schmidt's statement that he was traveling at 45 miles per hour at the time of the crash, which the City argues is inadmissible hearsay. An admission by a party-opponent is not hearsay. Tex. R. Evid. 801(e)(2). "*[A]ny* statement by a party-opponent is admissible against that party." *Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 858 (Tex. 2011) (emphasis in original). Likewise, an accident report setting forth the factual findings from an investigation in a civil case is admissible under Rule 803(8) as an exception to the hearsay rule (absent circumstances indicating a lack of trustworthiness). *See* Tex. R. Evid. 803(8).

The City also objected to Officer Glenn's deposition testimony under the rule of optional completeness. *See* Tex. R. Evid. 107. This is not a rule of

14

exclusion, but rather a rule of admissibility. *See Jones v. Colley*, 820 S.W.2d 863, 866 (Tex. App.—Texarkana 1991, writ denied). The trial court did not err in failing to exclude the deposition testimony on this ground.

The City's evidentiary complaints do not afford any relief. We overrule the City's second issue.

## C.    9-1-1 exception

In addition to the emergency exception, the TTCA provides for another exception to the waiver of governmental immunity when a public employee is responding to a 9-1-1 call:

> This chapter applies to a claim against a public agency that arises from an action of an employee of the public agency or a volunteer under direction of the public agency and that involves providing 9-1-1 service or responding to a 9-1-1 emergency call only if the action violates a statute or ordinance applicable to the action.

Tex. Civ. Prac. & Rem. Code § 101.062(b).

In its third issue, the City contends that it retains its governmental immunity under this "9-1-1 exception" for the same reasons it retains its immunity under the emergency exception. Under the facts of this case, the analysis for the 9-1-1 exception is not substantively different from the analysis applicable to the emergency exception. The City's issue under the 9-1-1 exception fails for the same reasons discussed above.

We overrule the City's third issue.

## D.    Negligence per se

In its fourth issue, the City argues that the TTCA does not clearly and unequivocally waive immunity for claims based upon negligence per se.

15

"Negligence per se is a common-law doctrine that allows courts to rely on a penal statute to define a reasonably prudent person's standard of care." *Reeder v. Daniel*, 61 S.W.3d 359, 361-62 (Tex. 2001). When the doctrine applies, a plaintiff may prove negligence as a matter of law by proving that the defendant violated the statute and the statutory violation proximately caused the plaintiff's injury. *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Negligence per se is not a separate cause of action that exists independently of a common-law negligence claim. *Id.* Rather, negligence per se is one method of proving a breach of duty, which is a necessary element in any negligence cause of action. *Id.*

In their live pleading, appellees alleged that Schmidt acted negligently in his operation of the fire engine and violated sections 545.401, 546.001, and 546.005 of the Texas Transportation Code. Appellees' allegations that Schmidt violated provisions of the Transportation Code are merely additional methods of proving that Schmidt breached a legal duty as required to establish negligence. *See id.* The City did not meet its summary-judgment burden to establish as a matter of law that the TTCA does not waive immunity for appellees' negligence per se claims. *See City of Houston v. Cruz*, No. 01-22-00647-CV, 2023 WL 8938408, at *10-11 (Tex. App.—Houston [1st Dist.] Dec. 28, 2023, no pet. h.) (mem. op.) (noting that, as movant, City bore the burden of establishing its argument as a matter of law; rejecting same argument raised in present appeal).

In arguing otherwise, the City relies primarily on the Waco Court of Appeals' decision in *Thoele v. Texas Department of Criminal Justice*. *See* No. 10-18-00249-CV, 2020 WL 7687864 (Tex. App.—Waco Dec. 22, 2020, no pet.) (mem. op.). There, Thoele asserted various TTCA claims, including negligence per se based on violations of rules promulgated by the federal Occupational Safety

16

and Health Administration ("OSHA"). *Id.* at *1. The trial court granted the governmental unit's motion to dismiss Thoele's claims under Rule of Civil Procedure 91a, and Thoele appealed. *Id.* On appeal, the Waco court noted that Texas courts do not recognize OSHA violations as establishing negligence per se. *Id.* at *5 (collecting cases). The court also stated that Thoele had not identified any section of the TTCA that waived immunity for claims of negligence per se. *Id.* at *6. Thus, the Waco court affirmed the trial court's dismissal of Thoele's negligence per se claims. *Id.*

Contrary to the City's argument, *Thoele* does not stand for the proposition that negligence per se is not actionable under the TTCA. Rather, the Waco court primarily based its negligence per se holding on well-established law that OSHA violations do not establish negligence per se. *See id.* at *5. Because appellees do not rely on violations of OSHA standards to establish negligence per se, *Thoele* is inapposite in this respect. *See Cruz*, 2023 WL 8938408, at *11 (rejecting City's reliance on *Thoele*).

The City also passingly relies on a second case from the Waco court. In a single sentence, the court concluded that a governmental unit retained its immunity against the plaintiff's claims because she failed to identify any section of the TTCA that waives immunity for claims based upon negligence per se. *Tex. Dep't of Crim. Just. v. Parker*, No. 10-18-00024-CV, 2020 WL 5833869, at *6 (Tex. App.—Sept. 30, 2020, no pet.) (mem. op.). Here, however, appellees have identified a section waiving immunity: section 101.021 governing use of a motor-driven vehicle. *See* Tex. Civ. Prac. & Rem. Code § 101.021(1); *see also McDonald v. City of the Colony*, No. 02-08-00263-CV, 2009 WL 1815648, at *7 n.11 (Tex. App.—Fort Worth June 25, 2009, no pet.) (mem. op.) ("Because we have held that the McDonalds invoked a waiver of the City's governmental

17

immunity under the TTCA's use-of-motor-driven-equipment exception to, we also hold that this waiver applies to their negligence per se claims."). *Parker* does not compel a different result.

We overrule the City's fourth issue.

## E. Standing

In its fifth issue, the City contends that Williams and Mitchell, both now over eighteen years of age, lack standing to assert claims for medical expenses incurred when they were minors. The City says the trial court erred in denying summary judgment on this ground and in granting leave to join the parents as plaintiffs because limitations had expired.

> 1. *A cause of action to recover medical expenses incurred by a minor before the minor attains majority belongs to the minor's parents.*

A child may recover damages for pain and suffering as well as for other damages she may accrue after she reaches the age of majority. *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983). However, a cause of action to recover medical expenses incurred by a minor through the date the minor attains the age of majority belongs to the minor's parents. *Id.* This is because "the parents of an unemancipated minor child are primarily responsible for the costs of medical attention furnished to him," and "in the absence of facts which would render the minor personally liable for such expenses, he has no cause of action to recover them from a third party tort feasor." *Acme Prods. Co. v. Wenzel*, 448 S.W.2d 139, 142 (Tex. App.—Houston [1st Dist.] 1969, no writ); *see also Hermann Hosp. v. Martinez*, 990 S.W.2d 476, 480 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("[P]arents do possess a cause of action to recover medical expenses incurred by their minor children.").

18

Consequently, when an adult has sued for past medical expenses incurred when she was a minor, courts have held that a suit for recovery of these expenses still belongs to the parents even after the minor attains the age of majority. *See Castelan v. Gerard*, No. 01-16-00463-CV, 2018 WL 2727781, at *2 (Tex. App.—Houston [1st Dist.] June 7, 2018, no pet.) (mem. op.); *Garcia v. Cerda*, No. 07-12-00168-CV, 2013 WL 3788509, at *2 (Tex. App.—Amarillo July 15, 2013, no pet.) (mem. op.); *Garza v. Garza*, 182 S.W.3d 69, 71 (Tex. App.—San Antonio 2005, no pet.). The minor lacks standing to assert a claim for medical expenses incurred before she reached eighteen years of age because the claim for such damages belongs to the parent. *See Sax*, 648 S.W.2d at 667.

As relevant here, in the original petition in this case, filed on May 1, 2019, Dewalt sought past medical expenses, but only as Mitchell's next friend. Dewalt did not seek medical expenses in her individual capacity. Four months later, Williams intervened as a plaintiff, asserting claims in her own name, though she was a minor when the accident occurred. Williams sought past and future medical expenses. After *Manning I*, the plaintiffs filed a Second Amended Petition on February 4, 2022. In that pleading, Mitchell asserted claims for past medical expenses in her own name; Dewalt was not listed as a plaintiff. Williams stood on her original petition in intervention.

Thus, at all times, no parents of Mitchell and Williams sued in an individual capacity to recover medical expenses incurred while Mitchell and Williams were minors. When the City filed its second motion for summary judgment, Mitchell and Williams were the parties asserting claims for those damages. But under Texas law, that cause of action belonged to the parents. For this reason, the City sought to dismiss these claims on lack of standing grounds. The trial court denied

the motion but granted appellees leave to "join Latishely Dewalt and Sherita Massie to this cause as persons needed for just adjudication."

On appeal, Williams and Mitchell contend they have personal liability for their pre-majority medical expenses and therefore have standing to recover them. As appellees correctly observe, the rule that such claims belong only to the parent does not apply if facts exist that would render the minor liable for such expenses. *Castelan*, 2018 WL 2727781, at *2. According to Mitchell and Williams, they remain liable for these expenses.

In their summary-judgment response, appellees made a different argument. They argued that Mitchell and Williams were financially responsible for their past medical expenses, and for that reason their parents should be joined to the suit; they did not argue, as they do on appeal, that their financial responsibility for the debt gave them standing to assert a claim for past medical expenses that ordinarily belonged to their parents. Their trial court argument does not comport with their appellate argument. Thus, we cannot affirm the trial court's summary judgment on this ground. *Henkel v. Norman*, 441 S.W.3d 249, 251 n.1 (Tex. 2014) (quoting *Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[W]e hold that a summary judgment cannot be affirmed on grounds not expressly set out in the motion or response.")).

Nonetheless, we will address what we consider to be the heart of their argument. Appellees contend that Mitchell and Williams are individually responsible for their pre-majority medical expenses, and thus they have standing to assert the claim. They point to a hospital lien against Mitchell, executed in relation to Mitchell's receipt of medical care after the accident, and to a statute mandating responsibility for repayment of medical care Williams received through Medicaid. Because Mitchell allegedly is required to satisfy the lien and Williams allegedly is

20

required to reimburse Medicaid, they contend they have standing. For support they rely on an opinion from this court, in which we noted that "a hospital lien attaches to any claim brought by the injured person which is attributed to the negligence of another." *Martinez*, 990 S.W.2d at 481. However, *Martinez* supports the City's position, not appellees'.

In *Martinez*, a car-crash case, the parents of two minors, Edgar and Vanessa, sued the City for the family's personal injuries. A hospital intervened to protect its lien after treating Edgar. *Id.* at 478. Among other damages, the parents properly sought the children's past medical expenses, and the jury properly was instructed on the measure of damages owing to the parents for the children's past medical care. *Id.* at 480. The jury awarded Edgar, individually, damages in excess of the TTCA's statutory cap. In the final judgment, the trial court awarded Edgar the maximum allowed by statute and did not award the parents any amount for Edgar's medical expenses. The court of appeals agreed this was proper, explaining that, because the City was liable for the statutory cap regarding its negligence to Edgar, "no additional damages are available for recovery as the result of Edgar's personal injuries caused by the City's negligence." *Id.* However, the parents were entitled to recover Vanessa's medical expenses: "Vanessa's individual monetary award was below the statutory cap. Her parents were entitled, therefore, to recover damages from the City for Vanessa's past medical expenses." *Id.*

A separate issue was whether the trial court erred in not enforcing the hospital's lien against the judgment entered in favor of Edgar. In its final judgment, the trial court found that the hospital's lien did not attach to any recovery of the Martinez family because Edgar's past medical expenses were not included in the monetary damages awarded to the Martinez family. *Id.* at 481. The court of appeals held this was error, reasoning that the hospital was entitled to

attach its lien to any amount recovered by Edgar, whether it was for past medical expenses or some other damages. *Id.* Accordingly, the court of appeals modified Edgar's damages to reduce the amount by the amount owed to the hospital. *Id.*

*Martinez* stands for two principles. First, a parent possesses, and may recover on, a claim for a minor's past medical expenses. *Id.* at 480. Second, a hospital may attach its lien to any amount recovered by an injured person that is attributed to the negligence of another. *Id.* at 481. *Martinez* does not stand for the proposition that, because a minor's damages award may be reduced by a hospital's lien, the minor has standing to assert a claim for past medical expenses. Appellees have not established that Mitchell and Williams have standing to assert a claim for pre-majority medical expenses.

For these reasons, the record establishes conclusively that the causes of action for Williams's and Mitchell's medical expenses incurred before they reached the age of majority belonged to their parents. Williams and Mitchell lack standing to assert those claims. Therefore, we hold the trial court erred in denying the City's second summary-judgment motion and in refusing to dismiss these claims. *See Castelan*, 2018 WL 2727781, at *3; *Garza* 182 S.W.3d at 71 (holding minor lacked standing to bring claim for medical expenses incurred before her eighteenth birthday).

2. *The court erred in permitting joinder of the parents after limitations expired*.

We next consider whether the parents' claims for Williams's and Mitchell's pre-majority medical expenses were timely asserted. The City contends they are barred by limitations and that the trial court erred in granting the parents leave to join the suit and assert these claims after limitations expired.

We review a trial court's decision granting leave to file an amended pleading for abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349-50 (Tex. 1980). However, limitations is an affirmative defense that may be established as a matter of law when, as here, the governing dates are not in dispute; accordingly, we review the City's limitations issue de novo. *See Rahlek, Ltd. v. Wells*, 587 S.W.3d 57, 73 (Tex. App.—Eastland 2019, pet. denied).

The accident occurred on December 21, 2018. Appellees' claims were subject to a two-year statute of limitations, which expired on December 21, 2020. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a). The live pleadings before the limitations deadline did not include Williams' parent as a party. Similarly, before December 21, 2020, Mitchell's parent sued only as next friend of Mitchell. Thus, Mitchell's parent was not a party because in a suit by a next friend, the party plaintiff is the minor and not the friend. *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 573 (Tex. 2015) (orig. proceeding). At no time before December 21, 2020 did a proper party assert a cause of action for Williams' and Mitchell's pre-majority medical expenses. Accordingly, the parents' claims are barred by the statute of limitations.

In response to the City's limitations argument, appellees assert that Dewalt's and Massie's claims for the minors' medical expenses relate back to the claims asserted in the original petition. Because those claims were timely filed, appellees continue, the parents' medical expense claims were timely even though they were not asserted until after the limitations period.

Texas's "relation back" doctrine, as set forth in section 16.068, entitled "Amended and Supplemental Pleadings," provides:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation

when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

Tex. Civ. Prac. & Rem. Code § 16.068.

With limited exceptions, section 16.068 does not apply when a new party is added to a pleading. *Chavez v. Andersen*, 525 S.W.3d 382, 386 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 400 (Tex. 2011) (holding, unless an exception applies, an amended pleading adding new party does not relate back to the original pleading.). Generally, section 16.068 "addresses adding claims, not parties." *Brown v. Enter. Recovery Sys., Inc.*, No. 02-11-00436-CV, 2013 WL 4506582, at *11 (Tex. App.—Fort Worth Aug. 22, 2013, pet. denied) (mem. op.) (refusing to apply section 16.068 in holding claims under federal debt collection practices act were time barred when plaintiff was not added until after one-year statute of limitations). Unless appellees can establish that an amended petition adding Dewalt and Massie as plaintiffs falls within an exception, they cannot rely on relation back under section 16.068.

Appellees assert that joining Dewalt and Massie falls within the misnomer exception to the relation-back rule. "Misnomer arises 'when a party misnames itself or another party, but the correct parties are involved.'" *Reddy P'ship/5900 N. Freeway LP v. Harris Cnty. Appraisal Dist.*, 370 S.W.3d 373, 376 (Tex. 2012) (quoting *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam)). "When the correct party sues or is sued under the incorrect name, 'the court acquires jurisdiction after service with the misnomer if it is clear that no one was misled or placed at a disadvantage by the error.'" *Id.*

24

(quoting *Sheldon v. Emergency Med. Consultants, I, P.A.*, 43 S.W.3d 701, 702 (Tex. App.—Fort Worth 2001, no pet.)).  In such cases, the plaintiff may amend its petition to correct the name, and the amendment will relate back to the original petition. *Id.* at 377.

This instance does not represent a misnomer of parties.  Ours is not a situation where Dewalt and Massie were joined in their individual capacities but misnamed.  In the original petition, Dewalt sued as next friend of Mitchell but did not sue individually to recover Mitchell's medical expenses.  Dewalt was omitted from the amended pleading.  In her petition in intervention, Williams sought her medical expenses on her own behalf; Massie was never a party to the litigation. Williams and Mitchell never had a cause of action for their pre-majority medical expenses; those claims were owned by the parents.  Suing in the child's name does not merely misname the correct plaintiff; it misidentifies the wrong plaintiff. *See Garza*, 182 S.W.3d at 71; *see also Tex. Pharmomed. Exports, Inc. v. Wang*, No. 14-19-00888-CV, 2021 WL 2325085, at *4-5 (Tex. App.—Houston [14th Dist.] June 8, 2021, pet. denied) (mem. op.) (original petition named Hejazi as the sole plaintiff but claim belonged to TPE, of which Hejazi was the sole owner; error was misidentification, not misnomer).

Therefore, we conclude that the relation-back doctrine does not apply to this circumstance, and the parents' claims for pre-majority medical expenses are barred by the statute of limitations. *Garza*, 182 S.W.3d at 71.  The trial court erred in granting leave to allow joinder of the parents to assert such claims after limitations expired.

We sustain the City's fifth issue.

## Conclusion

The City conclusively established that the statute of limitations had expired when it moved for summary judgment on Williams's and Mitchell's claims for past medical expenses. We conclude that the trial court erred in denying summary judgment in this narrow instance and in permitting Dewalt and Massie to join as plaintiffs. We render judgment that Williams and Mitchell take nothing on their claims for their medical expenses incurred before they reached majority age. We affirm the trial court's order in all other regards. We remand the case to the trial court for further proceedings in accordance with this opinion.


/s/    Kevin Jewell
        Justice


Panel consists of Justices Wise, Jewell, and Poissant.

26